JAMES WILSON *v.* SECURITY INSURANCE GROUP
(12651)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued February 5—decision released May 13, 1986

*Wesley W. Horton,* with whom were *Susan M. Cormier* and *Michael V. Hebert,* for the appellant (defendant).

*David M. Reilly,* for the appellee (plaintiff).

SHEA, J. The plaintiff, James Wilson, brought this action to compel arbitration of his claim against the defendant, Security Insurance Group, based upon a policy of automobile insurance issued to the town of Woodbridge. His complaint alleges that this policy provides uninsured motorist coverage for his benefit with respect to injuries he received while on duty as a police officer of the town when he was struck by an unidentified automobile that fled the scene of the accident.

The defendant insurer filed a counterclaim seeking a declaratory judgment to determine two issues relating to the coverage provided by the policy and also an injunction restraining the plaintiff from proceeding with arbitration. The trial court, *Reynolds, J.,* dismissed the counterclaim on the ground that the coverage questions raised must be decided by the arbitrators because the arbitration clause in the policy is required by General Statutes § 38-175c to include coverage disputes. After the trial of the case the court, *S. Freedman, J.,* rendered judgment for the plaintiff directing the defendant to proceed with arbitration. In appealing from the judgment the defendant has raised four issues challenging the dismissal of the counterclaim: (1) whether the language of the arbitration clause in the insurance policy requires that certain issues relating to coverage be submitted to arbitration; (2) whether arbitration of these coverage issues is mandated by General Statutes § 38-175c; (3) whether, if § 38-175c does compel arbitration of such issues, it unconstitutionally deprives the defendant of due process of law or infringes upon the authority of the judiciary; and (4) whether, even if the preceding issues involving the merits of the defendant's counterclaim were properly decided, the trial court should have dismissed the counterclaim suo motu instead of striking it in accordance with the plaintiff's motion. We find no reversible error in the dismissal of the counterclaim.

I

In its counterclaim the defendant sought a determination of two questions involving interpretation of the provisions of the insurance policy: (1) whether the plaintiff is permitted to stack uninsured motorist coverage in a case involving one vehicle in a fleet of thirty-one vehicles owned by the named insured, the town of Woodbridge; and (2) whether the defendant insurer, which also carries the workers' compensation insurance

for the town, the plaintiff's employer, is permitted to reduce the amount of uninsured motorist coverage by the amount of workers' compensation benefits paid or payable to the plaintiff. The defendant contends that these issues are not subject to arbitration under the clause of the policy that provides as follows: "If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle, or do not agree as to the amount of damages, the insured may make a written demand for arbitration." The plaintiff maintains that this provision makes a disagreement concerning either the liability of the uninsured motorist or the damages sustained by the insured a condition precedent to arbitration but does not restrict the scope of arbitration to those issues. He argues that once there is a predicate dispute concerning liability of the uninsured motorist or the damages recoverable, the clause may be construed to call for arbitration of all disputes between the parties, including those concerning uninsured motorist coverage.

This court has previously construed a similar arbitration clause[1] contained in the uninsured motorist section of an automobile policy not to apply to a coverage question even where that issue was also related to the determination of the liability of the uninsured motorist. *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 231 A.2d 531 (1967). "Under this provision, the only issues to be arbitrated are: (1) the insured's right

---

[1] The arbitration clause considered in *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274–75, 231 A.2d 531 (1967), was as follows: "If any person making claims hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration . . . ."

to recover damages from the owner or operator of an uninsured automobile, and (2) the amount of such damages." Id., 275. In the absence of a contrary statute, "[a] party who has contracted to arbitrate certain matters has no obligation to arbitrate any matters other than those he has agreed to arbitrate." Id., 274; *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 5, 110 A.2d 464 (1954). In framing this policy provision the defendant was entitled to rely on our construction of the similar clause in *Frager*[2] as not mandating arbitration of coverage issues. We agree with the defendant, therefore, that it did not by virtue of the terms of the policy agree to submit to arbitration the questions set forth in its counterclaim.

## II

The trial court appears to have relied, not on the language of the policy, in deciding that the counterclaim issues must be arbitrated, but upon General Statutes § 38-175c (a) (1).[3] This statute requires that every automobile liability policy provide uninsured motorist coverage and that, after October 1, 1971, such a policy, if it contains a provision for binding arbitration, "shall include a provision for final determination of insurance coverage in such arbitration proceeding." In *Oliva* v.

---

[2] The same case after remand was appealed once again after a trial on the merits. *Frager* v. *Pennsylvania General Ins. Co.,* 161 Conn. 472, 289 A.2d 896 (1971).

[3] "[General Statutes] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer

*Aetna Casualty & Surety Co.*, 181 Conn. 37, 41, 434 A.2d 304 (1980), we recognized that this provision of § 38-175c (a) (1) had legislatively overruled our holding in *Frager* that an insurer could contractually limit the uninsured motorist issues to be decided by the arbitrators and thus exclude questions of coverage. "The expressed intent and effect of the aforesaid amendment to § 38-175c is to remove from the court and to transfer to the arbitration panel the function of determining, in the first instance, all issues as to coverage under automobile liability insurance policies containing uninsured motorist clauses providing for arbitration." Id., 42.

The defendant does not dispute that we must read into the policy before us, in accordance with § 38-175c (a) (1), a provision for "final determination of insurance coverage" by arbitrators. *Oliva* v. *Aetna Casualty & Surety Co.*, supra, 41; see General Statutes § 38-175d. It contends, however, that the term "insurance coverage" as used in the statute does not include the issues of fleet stacking and workers' compensation setoff, which may require an interpretation of the statutes and regulations governing uninsured motorist benefits. We construe § 38-175c (a) (1) to make no distinction between coverage issues governed wholly by

shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars."

the policy language and those which may also require the application of statutes or regulations in order to resolve them. The legislative purpose in providing arbitration as an expeditious method of dispute resolution for uninsured motorist claims would be thwarted by requiring arbitrators to interpret the policy language in one proceeding and the courts to determine in another the effect of statutes or regulations upon the issues involved. Such a bifurcated procedure would be inconsistent with our view that § 38-175c (a) (1) transfers to the arbitration panel "the function of determining, in the first instance, *all issues as to coverage*" where the policy contains a provision for arbitration of any uninsured motorist claim. (Emphasis added.) *Oliva* v. *Aetna Casualty & Surety Co.,* supra, 42. Where the insurer had complied with § 38-175c (a) (1) by including in the uninsured motorist arbitration clause of the policy a provision for arbitration of disputes "as to the amount of payment which may be owing under this coverage," we decided that an unrestricted submission of coverage issues was intended. *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 19–21, 453 A.2d 1158 (1983). This defendant, whose policy does not conform to § 38-175c (a) (1), does not deserve a different result by virtue of its failure to follow the statutory mandate. We note that the Appellate Court has concluded that an arbitration clause making disputes as to "coverage of insurance" arbitrable applies to the issue of stacking of uninsured motorist coverages for each of three vehicles owned by the claimant and her husband. *American Motorists Ins. Co.* v. *Brookman,* 1 Conn. App. 219, 470 A.2d 253, cert. denied, 193 Conn. 801, 473 A.2d 1226 (1984). We see no reasonable basis for viewing § 38-175c (a) (1) as mandating arbitration of only those coverage issues governed wholly by the terms of the policy, as the defendant insurer contends.

## III

The defendant insurer next raises two constitutional claims that are predicated upon our construction of § 38-175c (a) (1) as mandating arbitration of the legal questions raised in the counterclaim: (1) that to authorize arbitrators to make a final determination of these legal issues, precluding review by the courts, effectively allows them to exercise an essential judicial function allocated exclusively to judges by article second[4] and article fifth, § 1,[5] of our state constitution; and (2) that such a delegation of power deprives a person of his "remedies by due course of law" in violation of article first, § 10,[6] of our state constitution. The defendant also relies upon federal constitutional provisions protecting against a deprivation of property without due process of law.

The defendant maintains that to find that § 38-175c (a) (1) requires arbitration of disputes not encompassed by the terms of the policy transforms the character of the arbitration from voluntary to compulsory. The plaintiff points out, however, that the statute directs only that, if the policy contains a provision for binding arbitration, it must also provide for a determination of coverage by the arbitrators. Therefore, he

---

[4] Article second of our state constitution provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

[5] Article fifth, § 1, of our state constitution provides: "The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."

[6] Article first, § 10, of our state constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

argues, the defendant had the option to make no provision in the policy whatsoever for arbitration and its failure to follow that course precludes it from now asserting that arbitration of coverage issues is compulsory. We do not believe, however, that the availability of the alternative standard judicial mechanism for resolution of all disputes under the policy, with the attendant consequences of increasing court congestion and related expenses to the parties, makes arbitration of the coverage issues, as required by the statute, the voluntary choice of the defendant. Such a legislative interference with contractual freedom, though not claimed to be violative of any constitutional right, so restricts the defendant's choices that the submission of the coverage issues to arbitration must in our view be deemed compulsory rather than voluntary. It is clear, under our construction of the policy, that the defendant never has agreed to arbitrate the issues raised in the counterclaim but has been ordered to do so by virtue of the statute. The arbitration of those coverage issues under such circumstances, therefore, must be regarded as compulsory.

In mounting its constitutional attack upon § 38-175c (a) (1) the defendant implicitly assumes that the limited scope of judicial review of an arbitration award that is available where the parties have freely submitted a question to arbitrators is also applicable to an award where the submission is under legal compulsion, as in this case. Where the authority to arbitrate rests wholly upon contract, an unrestricted submission of a dispute to arbitrators carries with it the power to decide with finality all issues of fact or law relating thereto. *Meyers* v. *Lakeridge Development Co.,* 173 Conn. 133, 135, 376 A.2d 1105 (1977). "Our courts will not review the evidence considered by the arbitrators . . . nor, where the submission is unrestricted, will they review the arbitrators' decision of

the legal questions." Id. "We have stated repeatedly that judicial review of arbitration awards is limited in scope because arbitration is a creature of contract and the parties delineate the power of the arbitrator by the terms of the submission." *Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18, 458 A.2d 685 (1983). Ordinarily,[7] judicial review of an award following an unrestricted submission is limited to whether the award conforms to the submission. *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 106, 438 A.2d 1171 (1981). We have previously held that the submission of "all issues as to coverage" mandated by § 38-175c (a) (1) contemplates an unrestricted submission for which judicial review of legal as well as factual determinations by the arbitrators is precluded. *Carroll* v. *Aetna Casualty & Surety Co.,* supra, 21–23.

Predicated upon the assumption[8] that the scope of judicial review of the arbitrator's determination of the coverage issues presented in its counterclaim will be limited to that available for an award upon a contractual submission, the defendant argues that

[7] "The grounds for vacating an award are restricted to (1) procurement of the award by 'corruption, fraud or undue means'; (2) 'evident partiality or corruption' of an arbitrator; (3) misconduct in refusing to postpone the hearing for sufficient cause; or (4) instances where 'the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.' General Statutes § 52-418. Awards may be modified only in the event of (1) a 'material miscalculation of figures' or 'material mistake in the description' of any person, thing or property referred to in the award; (2) an award upon a matter not submitted to the arbitrators unless it does not affect the merits of the decision upon the matters submitted; or (3) imperfections in matters of form not affecting the merits of the controversy. General Statutes § 52-419." *Carofano* v. *Bridgeport,* 196 Conn. 623, 636, 495 A.2d 1011 (1985).

[8] The defendant's assumption that the scope of review of compulsory arbitration awards is no greater than in voluntary arbitration may be based upon our decision in *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 453 A.2d 1158 (1983). In that case, however, the insurance company did not claim that the arbitration clause in the policy, which we construed

§ 38-175c (a) (1) encroaches upon the separate magistracy of the judiciary in violation of article second of our state constitution. "It is the province of the legislative department to define rights and prescribe remedies: of the judicial to construe legislative enactments, determine the rights secured thereby, and apply the remedies prescribed." *Atwood* v. *Buckingham,* 78 Conn. 423, 428, 62 A. 616 (1905). The defendant contends that the legislature may not impair the essential nature or jurisdiction of the Superior Court as a court of general trial jurisdiction; *Szarwak* v. *Warden,* 167 Conn. 10, 40, 355 A.2d 49 (1974); *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 32 A.2d 547 (1943); or this court as the supreme state tribunal for the determination of legal rights. *Styles* v. *Tyler,* 64 Conn. 432, 454, 30 A. 165 (1894). "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury* v. *Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803). A statute directing persons who have not previously agreed to the procedure to submit the determination of legal questions upon which substantial rights may depend to a nonjudicial tribunal whose decision thereon cannot be judicially reviewed for error, the defendant argues, cannot be squared with these principles.

In support of its due process claim the defendant relies primarily upon our state constitutional provision, article first, § 10, that "[a]ll courts shall be open, and every person, for an injury done to him in his . . . property . . . shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Contending that greater rights of access to

---

to provide for arbitration of all coverage issues, had been so framed only because of the requirements of General Statutes § 38-175c (a) (1). No claim that a distinction should be made in the scope of judicial review between compulsory and voluntary arbitration was presented nor was any constitutional issue raised, as in this appeal.

the courts are created under this provision than have been recognized under its federal constitutional due process counterpart; see *United States* v. *Kras*, 409 U.S. 434, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973); *Hardware Dealers Mutual Fire Ins. Co.* v. *Glidden*, 284 U.S. 151, 52 S. Ct. 69, 76 L. Ed. 214 (1931); *Reetz* v. *Michigan*, 188 U.S. 505, 23 S. Ct. 390, 47 L. Ed. 563 (1903); the defendant maintains that our state constitution guarantees the right to a judicial determination of legal issues in the absence of waiver, such as that inherent in an agreement to arbitrate. This right of redress in the courts, according to the defendant, has been recognized as "inviolate." *Gentile* v. *Altermatt,* 169 Conn. 267, 284, 363 A.2d 1 (1975).

We need not at this time, however, address the constitutional issues the defendant has raised, because the assumption on which they are based, that judicial review of the award to be made must be limited in scope to that available for voluntary arbitration, is not an inevitable conclusion. This court has suggested previously that the scope of judicial review available for compulsory arbitration awards need not be restricted to that permitted where parties have voluntarily submitted an issue to arbitrators. *Carofano* v. *Bridgeport,* 196 Conn. 623, 637, 495 A.2d 1011 (1985). "The simple and ineradicable fact is that voluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process." *Mount St. Mary's Hospital* v. *Catherwood,* 26 N.Y.2d 493, 500, 260 N.E.2d 508, 311 N.Y.S.2d 863 (1970). Courts of several states have recognized the need to broaden the scope of judicial review when arbitration is mandated by statute. Id.; *Detroit Automobile Inter-Ins. Exchange* v. *Gavin,* 416 Mich. 407, 433–34,

449–50, 331 N.W.2d 418 (1982); *Rodrigues* v. *Keller,* 113 Cal. App. 3d 838, 843 n.3, 170 Cal. Rptr. 349 (1980). As these courts have pointed out, the complete insulation of statutorily mandated arbitration awards from judicial review for errors of law creates the anomaly that, without consent of the parties, arbitrators become empowered to disregard the law in deciding issues affecting substantial rights. Thus the orderly development of uniform legal principles having precedential value cannot be achieved.

The issue of the appropriate scope of review of a compulsory arbitration award is not, however, properly raised by this appeal but must await the result of the arbitration that has been ordered. It would be inappropriate for this court to decide an issue upon which the trial court has yet to pass. Accordingly, we conclude that the defendant has prematurely raised the constitutional issues upon which it seeks our determination, because they appear to depend entirely upon the assumption that the defendant will not be afforded in the trial court judicial review of the questions of law raised by its counterclaim.

## IV

We agree with the defendant that the trial court should not have dismissed the counterclaim suo motu for lack of jurisdiction instead of granting the plaintiff's motion to strike. "A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." *Monroe* v. *Monroe,* 177 Conn. 173, 185, 413 A.2d 819 (1979). The Superior Court had subject matter jurisdiction over the counterclaim for declaratory relief despite the adequacy of other legal remedies. *England* v. *Coventry,* 183 Conn. 362, 364, 439 A.2d 372 (1981). Subject matter jurisdiction is lacking only where the deficiency relied upon could not be cured by consent of the parties. Although we have construed § 38-175c (a) (1) to give either party a right to

insist upon arbitration of the issues raised in the counterclaim, this right could have been waived by consenting to a different procedure. *Waterbury Teachers Assn.* v. *Waterbury,* 164 Conn. 426, 435, 324 A.2d 267 (1973); *Batter Building Materials Co.* v. *Kirschner,* supra, 11. General Statutes § 52-415 expressly provides for submission to the court "upon request of all the parties to the arbitration," of questions that arise during the arbitration proceeding.

The court concluded correctly, however, that, in the absence of consent or waiver, it would be wholly inappropriate to entertain the issues raised by the counterclaim until the arbitrators had made their award. The exercise of a sound discretion would not have permitted the defendant to proceed on its counterclaim. *England* v. *Coventry,* supra, 365; see Practice Book § 390 (c). The court, therefore, should have stricken the counterclaim in accordance with the plaintiff's motion instead of dismissing it. This procedural irregularity, however, has not prejudiced the defendant. In view of the result we have reached on the substantive issues, the defendant could not have successfully pleaded over nor has it advanced on appeal any reason for a remand to provide such an opportunity.

There is no error.

In this opinion the other judges concurred.