AMERICAN UNIVERSAL INSURANCE COMPANY *v.*
HERMAN DELGRECO, ADMINISTRATOR
(ESTATE OF JAMES M. DELGRECO)
(13067)

HEALEY, SHEA, CALLAHAN, SANTANIELLO and GLASS, Js.

*(One justice dissenting)*
Argued June 11—decision released September 1, 1987

*Jon S. Berk,* with whom, on the brief, were *Julie A. Harris* and *Julie P. Apter,* for the appellant (plaintiff).

*Michael C. Jainchill,* with whom, on the brief, was *Kathryn Calibey,* for the appellee (defendant).

CALLAHAN, J. This is an appeal from a decision of the trial court, which confirmed the award of an arbitration panel in favor of the defendant, Herman DelGreco, administrator of the estate of James DelGreco.[1]

The matter was decided by the arbitration panel upon a stipulation of facts submitted by the parties. Those pertinent to this inquiry are as follows: On December 5, 1983, James M. DelGreco sustained serious injuries, when his automobile was struck by one being driven by Ronald J. Fields, Jr. DelGreco died as a result of his injuries on July 7, 1984. Herman DelGreco, the administrator of James DelGreco's estate, pursued claims against Fields and, pursuant to General Statutes § 30-102, the Dram Shop Act,[2] against David's Restaurant. The estate was paid the $20,000 limit under Fields' motor vehicle liability policy by the Allstate Insurance Company. It also received the $20,000 policy

---

[1] The decision of the arbitration panel was two to one in favor of the defendant. Jeffrey L. Williams, a member of the panel, dissented.

[2] "[General Statutes (Rev. to 1983)] Sec. 30-102. LIQUOR SELLER LIABLE FOR DAMAGE BY INTOXICATED PERSONS, NOTICE OF ACTION. (a) If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. In computing such sixty-day period, the time between the death or incapacity of any aggrieved person and the appointment of an executor, administrator, conservator or guardian of his estate shall be excluded, except that the time so excluded shall not exceed one hundred twenty days. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of."

limit under David's Restaurant's dram shop policy, which had been issued by the Great American Insurance Company. It was stipulated that the damages to the estate were in excess of $100,000. Thereafter, the defendant administrator made a claim for the underinsured motorist benefits provided by an automobile insurance policy issued to the defendant's decedent by American Universal Insurance Company. That policy provided underinsured motorist benefits in the amount of $40,000 per accident and $5000 in basic reparations benefits. American Universal paid $2335.80 in basic reparations benefits but refused to pay any underinsured motorist benefits claiming that it was entitled, under the policy and Connecticut law, to a setoff, not only of the $20,000 paid by Allstate under Fields' automobile policy and $2335.80 in basic reparations benefits it had paid, but also, of the $20,000 paid to the estate under the dram shop policy issued to David's Restaurant. The parties stipulated that the plaintiff is entitled to a credit for the $20,000 paid by Allstate on Fields' policy and for the $2335.80 the plaintiff paid in basic reparations benefits. Therefore the entitlement to $17,664.20 of the $40,000 underinsured motorist benefits remains at issue.

Pursuant to § 38-175c (a) (1)[3] of the General Statutes, and the provisions of the automobile policy issued to

---

[3] General Statutes (Rev. to 1983) § 38-175c, as amended by Public Acts 1983, No. 83-267, § 2, and No. 83-461, provides: "Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such

the defendant's decedent, the parties submitted the following issue to the panel of arbitrators: Whether, "under the policy language and Connecticut law, the American Universal Insurance Company is entitled to an additional [setoff] in the amount of $20,000 which was paid on behalf of the dram shop." The arbitration panel, in a memorandum of decision dated July 22,

insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section."

1986, held that the setoff provisions of § 38-175c (b) (1) and the insurance regulations applied only to payments made by virtue of automobile bodily injury policies, and also that the dram shop payment was not made by or on behalf of "any person responsible for the injury" as required by § 38-175a-6 (d) (1) of the Regulations of Connecticut State Agencies.[4] The panel, therefore, ren-

[4] "[Regs., Conn. State Agencies] Sec. 38-175a-6. MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS

"(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent.

"(b) Arbitration. The insurance may provide but not require that the issues of liability as between the insured and the uninsured motorist, and the amount of damages, be arbitrated. The insurer may provide against being bound by any judgment against the uninsured motorist.

"(c) Exclusions. The insurer's obligations to pay may be made inapplicable:

"(1) To any claim which has been settled with the uninsured motorist without the consent of the insurer;

"(2) if the uninsured motor vehicle is owned by

"(A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing,

"(B) a self insurer under any motor vehicle law, or

"(C) any government or agency therof;

"(3) to pay or reimburse for workers' compensation or disability benefits.

"(d) Limits of liability. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workers' compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of basic reparations benefits paid for payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages

dered an award in favor of the defendant, holding that the plaintiff was not entitled to a setoff for the dram shop payment of $20,000 made to the decedent's estate.

Thereafter, in accordance with the provisions of General Statutes § 52-418,[5] the plaintiff filed an application to vacate the arbitration award in the Superior Court, arguing that the panel exceeded its powers and/or imperfectly executed them. The defendant moved, pursuant to General Statutes § 52-417, for an order confirming the arbitration award. The trial court reviewed the stipulated facts and the law, and after an "independent construction of the law," held that the arbitration panel's interpretation of the applicable law and its conclusions were "legally and logically correct" and confirmed the award. The plaintiff took a timely

shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment.

"(e) Recovery over. The insurer may require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim, provided that the insurer shall not acquire by assignment, prior to settlement or judgment, its insured's right of action to recover for bodily injury from any third party."

[5] "[General Statutes] Sec. 52-418. VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators."

appeal to the Appellate Court. Thereafter, the appeal was transferred to this court pursuant to Practice Book § 4023.

The dispositive questions raised by this appeal are: (1) What is the proper scope of judicial review of a compulsory arbitration decision and award; and (2) did the arbitration panel and the trial court err in holding that the plaintiff was not entitled to a setoff for dram shop payments under the underinsured coverage provisions of the general statutes and the insurance regulations?

## I

We are first called upon to decide the proper standard of judicial review of a compulsory arbitration award. The trial court, in interpreting dictum in *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 509 A.2d 467 (1986), determined that: "*Wilson* requires the reviewing court to consider these elements [the applicable statutes, insurance regulations and the contract of insurance] to determine whether the panel's interpretation or conclusions of the law are *legally* and *logically* correct." (Emphasis added.) The trial court then conducted an independent review and concluded that the arbitration panel's decision was correct and confirmed the award.

In *Wilson,* this court raised doubts as to the propriety of applying the standard of judicial review applicable to voluntary arbitration proceedings to a compulsory arbitration proceeding under General Statutes § 38-175c. We specifically held that "[t]he issue of the appropriate scope of judicial review of a compulsory arbitration award is not . . . properly raised by this appeal but must await the result of the arbitration that has been ordered." Id., 630. Additionally, we noted that voluntary and compulsory arbitrations are fundamentally different; id., 629; and that some states

have recognized the need to broaden the scope of judicial review when arbitration is mandated by statute. Id., 629–30. We did not, however, determine the extent of judicial review of compulsory arbitration awards.

Ordinarily, arbitration is a creature of contract whereby the parties themselves, by agreement, define the powers of the arbitrators. *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* 203 Conn. 133, 145, 523 A.2d 1271 (1987); *Board of Education* v. *AFSCME,* 195 Conn. 266, 269, 487 A.2d 553 (1985); *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Malecki* v. *Burnham,* 181 Conn. 211, 212–13, 435 A.2d 13 (1980); *Waterbury* v. *Waterbury Police Union,* 176 Conn. 401, 403, 407 A.2d 1013 (1979); *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* 174 Conn. 583, 587, 392 A.2d 461 (1978). Parties who have contracted to arbitrate certain matters have no duty to arbitrate other matters which they have not agreed to arbitrate. Nor can the courts, absent a statute, compel the parties to arbitrate those other matters. See *Security Ins. Co. of Hartford* v. *DeLaurentis,* 202 Conn. 178, 182–83, 520 A.2d 202 (1987); *Wilson* v. *Security Ins. Group,* supra, 622; *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 488, 439 A.2d 416 (1981); *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274, 231 A.2d 531 (1967). Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated the powers of the arbitrator through their submission, then the scope of judicial review of the award is limited by the terms of the parties' agreement and by the provisions of General Statutes § 52-418. See *Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18, 458 A.2d 685 (1983); *Carroll* v. *Aetna Casualty & Surety Co.,* supra, 21; *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 583, 440 A.2d 774 (1981);

*Waterbury* v. *Waterbury Police Union,* supra, 403, 407; *American Motorists Ins. Co.* v. *Brookman,* 1 Conn. App. 219, 221–22, 470 A.2d 253, cert. denied, 193 Conn. 801, 473 A.2d 1226 (1984). Thus, in determining whether an arbitrator has exceeded his authority or improperly executed the same under § 52-418 (a), the courts need only examine the submission and the award to determine whether the award conforms to the submission. *Wilson* v. *Security Ins. Group,* supra, 626–27; *Board of Education* v. *AFSCME,* supra, 271; *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Waterbury Construction Co.* v. *Board of Education,* 189 Conn. 560, 563, 457 A.2d 310 (1983); *Bic Pen Corporation* v. *Local No. 134,* supra, 584; *Malecki* v. *Burnham,* supra, 213; *Waterbury* v. *Waterbury Police Union,* supra, 404; *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* supra, 587–88, 590; *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 291, 377 A.2d 323 (1977). Under an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. *Wilson* v. *Security Ins. Group,* supra, 626–27; *Bruno* v. *Department of Consumer Protection,* supra, 18–19; *Carroll* v. *Aetna Casualty & Surety Co.,* supra, 19; *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 105–106, 438 A.2d 1171 (1981); *Milford Employees Assn.* v. *Milford,* 179 Conn. 678, 683, 427 A.2d 859 (1980); *Waterbury* v. *Waterbury Police Union,* supra; *Meyers* v. *Lakeridge Development Co.,* 173 Conn. 133, 135, 376 A.2d 1105 (1977); *American Motorists Ins. Co.* v. *Brookman,* supra, 223.

Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained

for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. See *Bridgeport* v. *Bridgeport Police Local 1159,* supra, 107–108; *Trumbull* v. *Trumbull Police Local 1745,* 1 Conn. App. 207, 213, 470 A.2d 1219 (1984). It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. See *New Britain* v. *Connecticut State Board of Mediation and Arbitration,* 178 Conn. 557, 563, 424 A.2d 263 (1979); *Trumbull* v. *Trumbull Police Local 1745,* supra. Thus, we have previously held that the parties should be bound by a decision that they contracted and bargained for, even if it is regarded as unwise or wrong on the merits. See *Local 453, International Union of Electrical, Radio & Machine Workers* v. *Otis Elevator Co.,* 314 F.2d 25, 28 (2d Cir.), cert. denied, 373 U.S. 949, 83 S. Ct. 1680, 10 L. Ed. 2d 705 (1963); *Bridgeport* v. *Bridgeport Police Local 1159,* supra, 107; *Trumbull* v. *Trumbull Police Local 1745,* supra, 213–14.

Such is not the case with statutorily mandated or compulsory arbitration. "The simple and ineradicable fact is that voluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process." *Mount St. Mary's Hospital* v. *Catherwood,* 26 N.Y.2d 493, 500, 260 N.E.2d 508, 311 N.Y.S.2d 863 (1970); see also *Carofano* v. *Bridgeport,* 196 Conn. 623, 637–38, 495 A.2d 1011 (1985); *Dearborn Fire Fighters Union, Local No. 412* v. *Dearborn,* 394 Mich. 229, 264, 231 N.W.2d 226 (1975); *Agri-Link Corporation* v. *Schmitz,* 272 Or. 654, 670, 538 P.2d 924 (1975). "Parties to a

contract calling for statutory arbitration are *not free to agree,* implicitly or explicitly, that their dispute will be resolved in disregard of controlling principles of constitutional, statutory, or judge-made law, and expect the courts to approve and enforce the result." (Emphasis added.) *Detroit Automobile Inter-Ins. Exchange* v. *Gavin,* 416 Mich. 407, 433, 331 N.W.2d 418 (1982). In *Wilson* v. *Security Ins. Group,* supra, 630, this court acknowledged that the complete insulation of statutorily mandated arbitration awards from judicial review for errors of law creates the anomaly that, without the consent of the parties, arbitrators are empowered to disregard the law in deciding issues affecting substantial rights. Therefore, we held that a higher level of judicial review of an arbitration award is warranted where the arbitration is statutorily mandated. Id.

The degree of judicial review warranted by a compulsory arbitration award has been addressed in other jurisdictions against the background of a variety of constitutional challenges to the statutory compulsory arbitration scheme. These jurisdictions have generally held that compulsory arbitration statutes that effectively close the courts to the litigants by compelling them to resort to arbitrators for a final and binding determination are void as against public policy and are unconstitutional. See *Henderson* v. *Ugalde,* 61 Ariz. 221, 224, 147 P.2d 490 (1944); *Attorney General* v. *Johnson,* 282 Md. 274, 288–90, 385 A.2d 57, appeal dismissed, 439 U.S. 805, 99 S. Ct. 60, 58 L. Ed. 2d 97 (1978); *Boughton* v. *Farmers Ins. Exchange,* 354 P.2d 1085, 1089 (Okla. 1960); *Smith Case,* 381 Pa. 223, 230, 112 A.2d 625, appeal dismissed, 350 U.S. 858, 76 S. Ct. 105, 100 L. Ed. 762 (1955); 5 Am. Jur. 2d 526, Arbitration and Award § 9; see annot., 55 A.L.R.2d 440–41, § 5. These compulsory arbitration statutes have been held uncon-

stitutional in that: (1) they deprive one of his property and liberty of contract without due process of the law; see *Dorchy* v. *Kansas,* 264 U.S. 286, 288, 44 S. Ct. 323, 68 L. Ed. 686 (1924); *Wolff Packing Co.* v. *Court of Industrial Relations,* 262 U.S. 522, 544, 43 S. Ct. 630, 67 L. Ed. 1103 (1923); *Mengel Co.* v. *Nashville Paper Products & Specialty Workers Union,* 221 F.2d 644, 647 (6th Cir. 1955); *Simon* v. *St. Elizabeth Medical Center,* 3 Ohio Op. 3d 164, 167, 355 N.E.2d 903 (1976); (2) they violate the litigants' seventh amendment right to a jury trial and/or the state's constitutional access to courts provisions; see *Simon* v. *St. Elizabeth Medical Center,* supra; 5 Am. Jur. 2d, supra; and (3) they result in the unconstitutional delegation of legislative or judicial power in violation of state constitutional separation of powers provisions. See *Spillman* v. *United States Fidelity & Guaranty Co.,* 179 So. 2d 454, 455 (La. App. 1965); *Macaluso* v. *Watson,* 171 So. 2d 755, 758 (La. App. 1965); *Biddeford* v. *Biddeford Teachers Assn.,* 304 A.2d 387, 402–403 (Me. 1973); *Local 170, Transport Workers Union of America* v. *Circuit Judge,* 322 Mich. 332, 347–48, 34 N.W.2d 71 (1948); *Sioux Falls* v. *Sioux Falls Firefighters Local 814,* 89 S.D. 455, 461, 234 N.W.2d 35 (1975); see also 5 Am. Jur. 2d, supra.

Compulsory arbitration, per se, however, is not automatically invalid so long as fair procedures are provided by the legislature and ultimate judicial review is available. *Republic Industries* v. *Teamsters Joint Council,* 718 F.2d 628, 641 (4th Cir. 1983), cert. denied, 467 U.S. 1259, 104 S. Ct. 3553, 82 L. Ed. 2d 855 (1984). Courts throughout the United States have uniformly upheld compulsory arbitration statutory schemes as against the constitutional challenges previously mentioned where *de novo judicial review* of the arbitrator's award is available to either party. See *Trustees of Amalga-*

*mated Insurance* v. *Gelman Industries,* 784 F.2d 926, 928–29 (9th Cir. 1986); *New England Merchants National Bank* v. *Hughes,* 556 F. Sup. 712, 714 (E.D. Pa. 1983); *Kimbrough* v. *Holiday Inn,* 478 F. Sup. 566, 571 (E.D. Pa. 1979); *Davison* v. *Siana Hospital of Baltimore,* 462 F. Sup. 778, 781 (D. Md. 1978); *Deibeikis* v. *Link-Belt Co.,* 261 Ill. 454, 466, 104 N.E. 211 (1914); *Osheroff* v. *Chestnut Lodge,* 62 Md. App. 519, 525, 490 A.2d 720, cert. denied, 304 Md. 163, 497 A.2d 1163 (1985); *National Instrument Co.* v. *Hortigro, Inc.,* 121 Misc. 2d 1077, 1078–79, 469 N.Y.S.2d 566 (1983); *Kuenzer* v. *Teamsters Union, Local No. 507,* 66 Ohio St. 2d 201, 203, 420 N.E.2d 1009 (1981); *Railway Co.* v. *Garrett,* 50 Ohio St. 405, 406–407, 34 N.E. 493 (1893); *Simon* v. *St. Elizabeth Medical Center,* supra, 168; *Medford Firefighters Assn.* v. *Medford,* 40 Or. App. 519, 595 P.2d 1268, 1272 (1979); *Weber* v. *Lynch,* 473 Pa. 599, 606, 375 A.2d 1278 (1977); *Smith Case,* supra.[6]

"The scope of judicial review of an arbitration award is necessarily dictated in large measure by the procedural form the arbitration proceedings take. . . . There is no requirement that a verbatim record be made. . . no formal requirements of procedure and practice . . . and no findings of fact or conclusions

---

[6] Although a few courts have applied different standards of review to a compulsory arbitration award, we find them either insufficient given the nature of compulsory arbitration proceedings or the functional equivalent of a de novo review; e.g., in *Spokane* v. *Spokane Police Guild,* 87 Wash. 2d 457, 461, 553 P.2d 1316 (1976), the court applied simply an "arbitrary and capricious" standard of review to a compulsory arbitration award. In *Detroit Automobile Inter-Ins. Exchange* v. *Gavin,* 416 Mich. 407, 443, 331 N.W.2d 418 (1982), the court adopted the following standard of review for application to statutorily required arbitration, " '[w]here it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside.' . . ." (Citation omitted.)

of law are required." *Detroit Automobile Inter-Ins. Exchange* v. *Gavin,* supra, 428; see also 6 C.J.S. 304–305, Arbitration § 85. Unless required by the submission, the decision of the arbitrator need contain no more than the actual decision, and need not make reference to the specific claims of the parties. An explanation of the means by which he reached the award is not needed, and, in fact, has been held to be superfluous. See *Bic Pen Corporation* v. *Local No. 134,* supra, 589; *Malecki* v. *Burnham,* supra, 213–14; *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* supra, 589; *Gary Excavating Co.* v. *North Haven,* 160 Conn. 411, 414, 279 A.2d 543 (1971). Thus, a standard of judicial review of compulsory arbitration proceedings which is limited to the record, and under which the reviewing court may determine only whether the award conforms to the submission, would in most cases be equivalent to no review at all and would be constitutionally suspect. Something more is required.

Since, in this case, there was a stipulation of facts, it is only necessary for its resolution that we articulate the standard of review necessary with regard to determining questions of law. Accordingly, we hold that, where judicial review of compulsory arbitration proceedings required by § 38-175c (a) (1) is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators. The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings.

## II

The plaintiff next claims that the trial court and the arbitration panel erred, as a matter of law, in deciding that the plaintiff is not entitled to set off the amount

due the defendant, pursuant to his decedent's underinsured motorist policy, by the amount which was paid to the defendant on behalf of the dram shop, David's Restaurant. We disagree.

In addressing this claim, we must consider the language of General Statutes § 38-175c (b) (1) and § 38-175a-6 (d) (1) of the Regulations of Connecticut State Agencies. Section 38-175c (b) (1) provides in pertinent part: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage *after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident* have been exhausted by payment of judgments or settlements. . . . " (Emphasis added.)

Section § 38-175a-6 (d) provides in pertinent part: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the General Statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) *paid by or on behalf of any person responsible for the injury.*[7] (Emphasis added.) The plaintiff relies mainly on the language of the regulation, and the public policy behind uninsured motorist coverage, to support its contention that it is entitled to set off the dram shop payment because the dram shop was "responsible for the injury" to the insured. In addition, it claims that the language, "all bodily injury liability bonds or insurance policies applicable at the time of the accident," which is contained in § 38-175c (b) (1), is unqualified, and thus applies to any kind of insurance, including dram shop

[7] The language of the offset provision in the uninsured motorist portion of the insurance policy provides: "Any sums otherwise payable for damages under this coverage shall be reduced by all sums: (1) paid by or on behalf of persons or organizations who may be legally responsible."

policies. In response, the defendant argues that these provisions apply only to *automobile* liability policies applicable at the time of the accident and to persons and/or organizations that are operators of the automobiles. The trial court agreed with the defendant's interpretation of the statute, and we agree with the trial court.

It is clear that, when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811 (1987); *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54–55, 523 A.2d 477 (1987); *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). If, however, the language is unclear, as it is with § 38-175c (b) (1), we must ascertain the intent of the legislature by examining the language of the statute, its legislative history and the purpose the statute is to serve. *State* v. *White,* supra, 422; *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). In addition, the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. *Orticelli* v. *Powers,* 197 Conn. 9, 14, 495 A.2d 1023 (1985); *Peck* v. *Jacquemin,* 196 Conn. 53, 63, 491 A.2d 1043 (1985).

General Statutes § 38-175c (a) (1), as amended by Public Acts 1979, No. 79-235, and which contains the subsection at issue in this case, expressly provides "[e]very such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such [insurance] regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* . . . ." (Emphasis added.) The 1979 amend-

ment added subsection (b) (1), quoted earlier in this opinion, and (2), which provides: "For the purposes of this section, an 'underinsured motor vehicle' means *a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident* is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section." (Emphasis added.)

In deciding whether a dram shop policy should be considered as a "bodily injury liability bond or insurance policy" for purposes of this statute, we agree with the plaintiff that the language is not crystal clear. Examining the statutory scheme in its entirety does, however, offer guidance on this issue. Section 38-175c (a) (1) refers to the mandatory minimum provisions for *automobile* liability policies as set forth in General Statutes § 14-112. *Citrano* v. *Berkshire Mutual Ins. Co.*, 171 Conn. 248, 253, 368 A.2d 54 (1976); cf. *Beloff* v. *Progressive Casualty Ins. Co.*, supra, 55–59. In addition, as the defendant points out, the bodily injury liability bonds and insurance policies described in subsection (b) (2) are those which cover the tortfeasor's motor vehicle. That subsection mandates that, in determining whether a motor vehicle is "underinsured" for purposes of § 38-175c, the aggregate of the limits of all such bonds and policies *on the tortfeasor's motor vehicle* is compared against the amount of uninsured motorist coverage of the insured. If the aggregate is less than the limits of liability in the uninsured motorist portion of the insured's policy, then the underinsurance coverage is activated. Therefore, it seems logical and rational to construe the reference to "bodily injury liability bonds and insurance policies" in subsections (a) and (b) (2) as referring only to automobile policies. Although the language of subsection (b) (1) does not specifically limit

the phrase "all bodily injury bonds or insurance policies applicable at the time of the accident" to the tortfeasor's motor vehicle as does subsection (b) (2), when it is read together with the entire statute, in order for the legislation to be consistent, it must also be interpreted as referring to any *automobile policy* issued to the tortfeaser.

A review of the legislative history and purpose of § 38-175c supports this interpretation. In commenting on Public Acts 1979, No. 79-235, Representative Silvio Mastrianni explained that "[a]n uninsured vehicle is generally defined *as a vehicle to which no bodily injury bond* or *policy* applies at the time of the accident. . . . Mr. Speaker, this bill requires coverage be provided against the underinsured motorist. It also requires [the] insurance company of an innocent driver to pay up to the full amount of the uninsured motorist coverage when the *at fault driver's insurance* has been exhausted and a deficiency remains." (Emphasis added.) 22 H.R. Proc., Pt. 16, 1979 Sess., p. 5341. Senator James J. Murphy, Jr., in remarking on the same bill, stated: "[w]hat this bill does is require that hereafter, when one has purchased uninsured motorist coverage, that if that coverage exceeds any insurance coverage which a responsible party has in causing injuries, that *once the liability insurance of the so-called responsible or negligent party has been exhausted,* if there is additional coverage under one's uninsured motorist's plan, then payment under that program would be *triggered* and allow for the greater recovery of the insured . . . ." (Emphasis added.) 22 S. Proc., Pt. 5, 1979 Sess., p. 1354.[8] These comments indicate a legislative intent that underinsured motorist coverage is triggered when the

---

[8] "In construing a statute and determining the legislative intent, we may take judicial notice of the discussions on the floor of the General Assembly although such discussions are not controlling on statutory interpretation. See *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 245, 377 A.2d

tortfeasor's *automobile* liability coverage is exhausted. A dram shop policy is not classified as automobile coverage. Rather, it is designed to cover risks arising out of the sale of intoxicating liquors. See *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 58–59, 119 A.2d 325 (1955); *Lincoln Casualty Co.* v. *Vic & Mario's, Inc.,* 62 Ill. App. 2d 262, 265–66, 210 N.E.2d 329 (1965); 13A G. Couch, Insurance (2d Ed.) § 48:186. We conclude, therefore, that a dram shop policy was not intended to be considered as "bodily injury liability bonds or insurance policies" for purposes of § 38-175c (b) (1).

The plaintiff argues that, despite this conclusion, nothing in § 38-175c specifically addresses the issue of what the insurer may or may not setoff against its liability under the authority of the insurance regulations. We agree. Section 38-175a grants the insurance commissioner the authority to enact regulations governing uninsured/underinsured coverage. *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 472–73, 370 A.2d 1011 (1976); *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 448–49, 370 A.2d 1006 (1976). The regulations, however, must carry into effect the purpose and intent of the statute pursuant to which they are enacted. See *Salmon Brook Convalescent Home* v. *Commission on Hospital & Health Care,* 177 Conn. 356, 365, 417 A.2d 358 (1979); *Citrano* v. *Berkshire Mutual Ins. Co.,* 171 Conn. 248, 255, 368 A.2d 54 (1976); *Berlinski* v. *Ovellette,* 164 Conn. 482, 492, 325 A.2d 239 (1973). We also note that a limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer. 12A G. Couch, supra, § 45:652; see also *Madison County Mutual Auto Ins.*

305 (1977); *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974); *Harris* v. *Planning Commission,* 151 Conn. 95, 100, 193 A.2d 499 (1963)." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 391 n.5, 446 A.2d 1059 (1982).

*Co.* v. *Goodpasture,* 130 Ill. App. 2d 946, 267 N.E.2d 31, aff'd, 49 Ill. 2d 555, 276 N.E.2d 289 (1971). The regulatory language that the plaintiff relies on must be read, therefore, in light of this principle as well as the language and intent of § 38-175c.

The plaintiff argues that Connecticut Insurance Regulation § 38-175a-6 (d) allows for setoffs of monies received pursuant to a dram shop policy. As mentioned previously, the regulation states that an insurance "policy may provide for the reduction of the insurer's liability to the extent that damages have been (1) paid by or on behalf of *any person responsible for the injury. . . .* " Both the arbitration panel and the trial court concluded that the regulation, when read in conjunction with the language and intent of § 38-175c, relates only to setoffs of amounts received from other automobile liability policies of those "responsible for the injury." We agree. To interpret the regulation otherwise would defeat the remedial purpose of underinsured motorist coverage to protect and make whole a person injured at the hands of an uninsured/underinsured *motorist. Harvey* v. *Traveler's Indemnity Co.,* 188 Conn. 245, 449 A.2d 157 (1982); *Infante* v. *Texas Farmers Ins. Co.,* 640 S.W.2d 321, 323 (Tex. App. 1982); see 12A G. Couch, supra, §§ 8:6 (e), 45:624, and cases cited therein; 2 A. Widiss, Uninsured and Underinsured Motorist Insurance (1987) § 31.4 (underinsured motorist coverage provides protection for the risk that the damages sustained by insureds will not be adequately indemnified by the liability coverage carried by a *negligent insured motorist*).[9] This is

___

[9] The plaintiff, relying on *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 474, 370 A.2d 1011 (1976), also argues that the purpose of uninsured motorist coverage is simply to ensure a "minimum" level of protection, and that where the "injured party receives more than the minimum level of protection from one of those responsible for the injuries, the statutory purpose is satisfied and no recourse to the uninsured motorist coverages is warranted." Even if we were to agree that the dram shop is "responsible"

manifestly true in this situation where the sums due the decedent's estate, even if all were to be collected, are far short of the damages suffered. As the defendant argues, "an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies *expressly* authorizes." (Emphasis added.) *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 483, 518 A.2d 373 (1986); see 2 A. Widiss, supra, § 35.2. Clearly, § 38-175a-6 (d) (1) does not expressly authorize a deduction for payments received pursuant to a dram shop policy.

In addition, we are not persuaded by the plaintiff's argument that, under General Statutes § 30-102, a payment by a dram shop is by one "responsible for the injury" as is required by the regulation in order to invoke the setoff. We stated in *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 348-49, 493 A.2d 184 (1985), that "[§ 30-102] establishes a cause of action that did not exist at common law. *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). It creates a new tort liability which is based upon a specified course of conduct and the consequences of such conduct. *Staples* v. *Lucas,* 142 Conn. 452, 456, 115 A.2d 337 (1955). The delict defined by § 30-102 is not the sale of liquor to create a condition of intoxication. It is rather

for the injuries, we must note that there are basic differences between the policies of uninsured and underinsured motorist coverage. See 2 A. Widiss, Uninsured and Underinsured Motorist Insurance (1987) § 31.4. The statutory change which provided for underinsured coverage was a legislative response to both the *Roy* case and *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 338 A.2d 453 (1973), and it was introduced to provide more than the minimum protection. See *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249-52, 449 A.2d 157 (1982); *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 390-97, 446 A.2d 1059 (1982); Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1979 Sess., pp. 81-82, remarks of Joseph C. Mike, commissioner on insurance. We must therefore keep this broader policy in mind in interpreting the regulation.

the sale of liquor to one who is already intoxicated. *No causal relation between the sale and the injury is required. London & Lancashire Indemnity Co.* v. *Duryea,* [supra, 59]. To recover under the statute, a plaintiff must bring himself squarely within its provisions. Id., 57. In each case, therefore, the trier must decide as a question of fact: whether there was (1) a sale of intoxicating liquor (2) to an intoxicated person (3) who, in consequence of such intoxication, causes injury to the person or property of another." (Emphasis added.) Viewed from this perspective, we cannot conclude that a payment made pursuant to a dram shop policy is made by a person "responsible for the injury." Furthermore, such a payment is not made "on behalf of any person responsible for the injury."[10] Instead, a dram shop payment is made on behalf of a liquor establishment which serves alcohol to an intoxicated person who thereafter causes injury to a third party. See *Sanders* v. *Officers Club of Connecticut, Inc.,* supra; 12A G. Couch, supra, § 48:186.

We hold therefore that the trial court was correct in finding that General Statutes § 38-175c and § 38-175a-6 (d) (1) of the regulations of Connecticut state agencies do not allow an insurer to reduce its liability for underinsured motorist coverage by an amount of money received by the insured pursuant to a dram shop policy.

There is no error.[11]

In this opinion HEALEY, SANTANIELLO and GLASS, Js., concurred.

---

[10] We recognize that the language of the setoff contained in the insurance contract is broader than that of the regulation. See footnote 7, supra. We indicated in *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 399, 446 A.2d 1059 (1982), however, that any provision of a private contract of insurance which conflicts with the statutes or regulations must give way to the latter. See General Statutes § 38-175d.

[11] Though the trial court did not use the words "de novo review" in reference to the standard of review it applied, its "independent construction

SHEA, J., dissenting. I agree with part I of the opinion, which establishes a de novo standard for review of questions of law arising in a compulsory arbitration proceeding. I disagree with part II, however, which holds that only motor vehicle liability policies are included within the phrase "all bodily injury liability bonds and insurance policies applicable at the time of the accident," which is used to establish the prescribed limits for "uninsured motorist coverage" in subsection (b) (1) of General Statutes § 38-175c and thus to define the term "underinsured motor vehicle" in subsection (b) (2) of § 38-175c. The plain intent of this reference to "all" bodily injury liability policies was that every available source of liability insurance coverage for an accident should be considered before resorting to the uninsured or underinsured motorist coverage, in pursuance of the legislative scheme to make such coverage available at the lowest possible cost. See *Bobeck* v. *Public Service Mutual Ins. Co.,* 38 Conn. Sup. 318, 323, 445 A.2d 602 (1981).

In reaching the conclusion that only motor vehicle liability policies were intended to be considered in determining whether a motor vehicle is "underinsured," the opinion necessarily overturns the regulation of the commissioner of insurance; Regs., Conn. State Agencies § 38-175a-6; authorizing the reduction of uninsured motorist coverage, and accordingly underinsured coverage, by amounts that have been "paid by or on behalf of any person responsible for the injury." That regulation, adopted by the commissioner in accordance with the directive of General Statutes § 38-175a (a) for regulations "with respect to minimum provisions to be included in automobile liability policies," is a reasonable interpretation of § 38-175c and is wholly consist-

---

of the law" was its functional equivalent. It is therefore unnecessary to remand this case to the trial court for the application of the proper standard of review.

ent with the reference to "all bodily injury liability policies applicable at the time of the accident" contained in subsection (b) (1) and (2) thereof. Such a regulation, issued after proper hearings and consultations "with insurers licensed to write automobile liability insurance in this state and other interested parties" pursuant to § 38-175a (b), ought not to be set aside unless it is clearly in conflict with the statutes. In concluding that such a conflict exists, the opinion relies primarily upon some ambiguous legislative history to narrow the scope of the reference in § 38-175c (b) (2) to "all" bodily injury liability policies applicable to the accident. These inconclusive remarks of two legislators, which are only remotely related to the question before us, should not be accorded such significance as to change the plain meaning of the statute.

Accordingly, I dissent from part II of this opinion.