[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 6234
FACTS
This action arises out of a construction payment dispute between the owner of the construction project, the contractor, and a subcontractor. The court finds the following facts were before the arbitrator. (See S.C.O. record.)
S.C.O. Development Company (hereinafter "S.C.O."), is the owner of a commercial construction project known as the "Gateway Project," located in Waterbury, Connecticut. On April 1, 1989, S.C.O. entered into a contract with Specialty Management Corporation (hereinafter referred to as "SMCORP"), which would serve as construction manager of the "Gateway Project." On July 14, 1989, SMCORP entered into a partnership agreement with William Steward Construction Management Corporation (hereinafter referred to as "Steward"), whereby they formed Specialty Management Company (hereinafter referred to as "SMC"), to "enter into and complete construction management contracts. . ." (See S.C.O. record, S-10, Partnership Agreement p. 1).
On December 15, 1989, SMC entered into a subcontract agreement with Consolidated Precast, Incorporated (hereinafter referred to as "CPI"), whereby CPI was to provide concrete precast for the "Gateway Project." CPI was to be paid $235,000.00 for its work. The subcontract agreement between SMC and CPI lists SMC as the contractor, CPI as the subcontractor, and S.C.O. as the owner of the project, Gateway Center. (See S.C.O. record, C-4).
On March 5, 1990, a letter was sent from Brian Connolly of S.C.O. to CPI, concerning specifications of the subcontract. Under Brian Connolly's name at the bottom of the letter is the title "Project Manager." It should be noted that this letter was sent on SMC stationery. (See S.C.O. record, C-4.) On August 3, 1990, S.C.O. sent a letter to First Federal Savings 
Loan of Waterbury, Connecticut, stating that First Federal was to count the number of pieces of precast installed each day by CPI, and to issue a check each day for the number of pieces installed. (See S.C.O. record, S-3.) On August 24, 1990, Neil Postighone, President of SMC, sent a letter to all subcontractors stating that their contracts had been assigned to S.C.O. and that all directions, correspondence and payments would be made directly from S.C.O. (See S.C.O. record, C-2.) CT Page 6235 The letter further stated that S.C.O.'s representative, Brian Connolly, should be contacted for any further information. S.C.O. issued checks to CPI on September 7, 1990, and on September 12, 1990, in the amount of $83,250.00 and $108,225.00, respectively. (See S.C.O. record, R-2 and R-3.) On February 12, 1991, S.C.O. sent a letter to CPI confirming a change order that S.C.O. had requested. A price of $656.91 was authorized for the order. (See S.C.O. record, C-2.) Letters were sent from CPI to S.C.O. on three different occasions, March 19, 1991, June 21, 1991, and September 3, 1991, requesting payment of the remaining money due on the contract, $24,181.91. (See S.C.O. record, R-4 and R-5.) S.C.O. has not paid the remaining money owed on the contract.
On September 16, 1991, CPI filed a demand for arbitration with the American Arbitration Association against S.C.O. and SMC accompanied by a document entitled "Claimant's Statement." On March 19, 1992, S.C.O. filed its answer and special defenses to CPI's demand for arbitration. While there was no written "submission" submitted to the arbitrator it is submitted that, from CPI's statement and S.C.O.'s answer and special defenses, the issues before the arbitrator were whether S.C.O. accepted an assignment of the subcontract and whether there was a novation of the contract by CPI. On December 25, 1992, the arbitrator made a written award in favor of CPI against S.C.O. in the amount of $27,637.60. The arbitrator held that "S.C.O. Development Company by its actions became a party to the written contract between Specialty Management Company and Consolidated Precast, Inc. Accordingly, they are bound by the arbitration clause contained therein and this arbitration has jurisdiction." (See S.C.O. record, Exhibit C Arbitrator's Award.) The arbitrator also held that SMC was not liable to CPI on the subcontract. The arbitrator denied CPI's claim against SMC for the remaining money owed under the contract and denied without prejudice SMC's crossclaim against S.C.O. because no award was made against SMC.
On January 20, 1993, S.C.O. filed an application to vacate arbitration award. S.C.O. has complied with the provisions of General Statutes 52-420(b) which requires that a motion to vacate an arbitration award be made within thirty days of receiving notice of the award. Although no transcript of the arbitration hearing was made, S.C.O. has filed a brief in support of its motion and a record of exhibits. On January 28, 1993, CPI filed an application to confirm the arbitration award CT Page 6236 in part and vacate in part[1], accompanied by a memorandum of law. On March 1, 1993, CPI filed a motion in limine asking the court to preclude an evidentiary hearing regarding the arbitrability of this dispute and a memorandum of law in opposition to S.C.O.'s motion to vacate the arbitration award. Oral argument was heard before this court on March 3, 1993.
DISCUSSION
S.C.O. argues that an evidentiary hearing is always necessary when a subject matter jurisdiction dispute arises. S.C.O. states that it did not sign any agreement regarding arbitration with CPI; that it never signed a consent agreement to assign the contract between SMC and CPI; that it never signed the assignment form letter; and that the arbitrator exceeded his power in that the award is an irrational application of the law. S.C.O. argues that the arbitrator did not have subject matter jurisdiction to arbitrate this dispute because there was no agreement between S.C.O. and CPI. S.C.O. claims that since the arbitrator was without subject matter jurisdiction, this court is also without subject matter jurisdiction.
CPI argues that the arbitrator had subject matter jurisdiction over this dispute because S.C.O. accepted assignment of the subcontract and the agreement does not have to be signed by both parties to enforce an arbitration clause. CPI I also argues that the court's standard of review in this case is based on the arbitrator's decision, and is not de novo. Furthermore, CPI maintains that since S.C.O. is challenging the subject matter jurisdiction of the arbitrator and this court, S.C.O. has the burden of preserving a record of the arbitration hearing and the failure to do so should not allow S.C.O. to have another hearing concerning arbitrability.
CPI's remaining grounds to confirm the arbitration award are (1) that the court should follow the arbitrator's decision absent misconstruction by the arbitrator; (2) S.C.O. participated in the arbitration proceedings and has had a full and fair hearing on the merits; (3) S.C.O. failed to elect General Statutes 52-410 which would have allowed it to refuse to submit to arbitration and receive a court hearing instead; and (4) S.C.O. has received the benefit of CPI's work and has paid 90% of the contract price to CPI.
The arbitrator held that "S.C.O. Development Company by its CT Page 6237 actions became a party to the written contract between Specialty Management Company and Consolidated Precast, Inc." (See Record Exhibit C.)
"An assignment, like other agreements, may sometimes be implied from a transaction without express words. . . ." Williston on Contracts, 3rd. ed., p. 145.
An application to confirm or vacate an arbitration award "triggers special statutory proceedings that are not civil actions." Middletown v. Police Local, No. 1361, 187 Conn. 228,231, 445 A.2d 332 (1982). The scope of the arbitration issues is determined by the parties as set forth in the contract, not by the trial court. Bio-Polymers, Inc. v. D'Arrigo, 23 Conn. App. 107,110, 579 A.2d 122 (1990), see also Bic Pen Corp. v. Local No. 134, 183 Conn. 579, 583-84, 440 A.2d 774 (1981).
General Statutes 52-408 provides:
 An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof. . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.
"Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated the powers of the arbitrator through their submission, then the scope of the judicial review of the award is limited by the terms of the parties' agreement and by the provisions of General Statutes52-418." American Universal Ins. v. DelGreco, 205 Conn. 178,185, 530 A.2d 171 (1987); see also Cashman v. Sullivan Doegan, P.C., 23 Conn. App. 24, 26, 578 A.2d 167 (1990); Dugas v. Lumbermens Mutual Casualty Co., 14 Conn. App. 153, 156,540 A.2d 89 (1988). General Statutes 52-418 provides in part:
 (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the CT Page 6238 parties resides. . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
"Arbitration is created by a contract between the parties, referred to as the agreement of submission. The written submission defines the powers of the arbitrator, and the parties are bound by the limits they have fixed. It is the submission that generally controls the parties' rights on judicial review." Cashman, supra, 27. "Any challenge to an award on the ground that the arbitrator exceeded his powers is, therefore, properly limited to a comparison of the award with the submission." American Universal, supra, 186.
The subcontract between SMC and CPI contained an arbitration clause in Article 6, 6.1, which stated:
 Any controversy or claim between the Contractor and the Subcontractor arising out of or related to this Subcontract, or the breach thereof, shall be settled by arbitration, which shall be conducted in the same manner and under the same provisions as provided in the Prime Contract with respect to claims between the Owner and the Contractor. . . .[2]
Section 7.3 of the subcontract, entitled "Assignment of The Subcontract," provides in section 7.3.1:
In the event of termination of the Prime CT Page 6239 Contract by the Owner, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract.
The court finds that, based on the record, the submissions, and the arbitrator's award, the arbitrator did not exceed his authority in finding that there was an assignment of the subcontract and that the dispute between S.C.O. and CPI was subject to arbitration. S.C.O. has presented no evidence to show that the arbitrator's decision in any way violated General Statutes 52-418. Therefore, a further evidentiary hearing regarding the arbitrator's authority to render an award in this action is not required, and the court finds that the arbitrator's award conforms to the submission of the parties in the form of their statement and answer and special defenses. Accordingly, the court grants the motion to confirm the arbitrator's decision and denies the motion to vacate the arbitrator's decision. The motion in limine is granted.
SYLVESTER, J.
ENDNOTES