CONNECTICUT INSURANCE GUARANTY
ASSOCIATION *v.* ANTHONY ZASUN
(AC 17444)

O'Connell, C. J., and Foti and Lavery, Js.

Argued September 29, 1998—officially released March 16, 1999

*Alan J. Cooke*, with whom were *Brian W. Smith* and, on the brief, *James P. Mooney, Joseph C. Marrow*, pro hac vice, and *Joseph C. Tanski*, pro hac vice, for the appellant (plaintiff).

*George H. Romania*, with whom, on the brief, was *Michael E. Rizzo*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff Connecticut Insurance Guaranty Association (association) appeals from the judgment of the trial court denying its application to vacate an arbitration panel's award of uninsured motorist benefits to the minor defendant, Anthony Zasun. The initial claim for uninsured motorist benefits was brought by Beth Onolfo as next friend of Zasun. On appeal, the association claims that the trial court improperly denied its application to vacate the arbitration award by (1) ruling that the arbitration panel had subject matter jurisdiction to interpret and apply the provisions of the

Connecticut Insurance Guaranty Association Act (guaranty act),[1] (2) concluding that the arbitration was voluntary and unrestricted, (3) applying the standard of whether the award conformed to the submission, (4) failing to conduct a de novo review of the legal issues concerning coverage, (5) failing to apply the substantial evidence test of factual findings concerning coverage issues, (6) failing to conclude that the arbitrators' findings evidenced a manifest disregard of the law and (7) failing to determine whether the arbitration panel had demonstrated a manifest disregard of the law concerning defenses raised by the association. We affirm the judgment of the trial court.

The following facts are not in dispute. On or about August 9, 1991, D & L Transportation Company (bus company) entered into a contract of motor vehicle insurance with United Community Insurance Company (insurer). Pursuant to the insurance policy, the insurer was to provide the bus company with $1,000,000 of single limit uninsured motorist coverage. At some later undetermined date, the bus company requested that the uninsured motorist coverage provided by the contract be reduced to $40,000. The insurance contract also contained an arbitration clause.[2] On November 1, 1991, Zasun was a passenger on a school bus owned by the bus company when it was struck by an unidentified tractor trailer. Zasun sustained serious personal injuries as a result of the accident.

---

[1] See General Statutes § 38a-836 et seq.

[2] The arbitration provision of the contract states in relevant part: "a. If we and an 'insured' disagree whether the 'insured' is legally entitled to recover damages from the owner or driver of an 'uninsured motor vehicle' or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. . . .

"b. Unless both parties agree otherwise, arbitration will take place in the county in which the 'insured' lives. . . . A decision agreed to by two of the arbitrators will be binding."

In January, 1993, Zasun commenced an action against the insurer to compel arbitration of his uninsured motorist claim. The trial court, *Hodgson, J.*, ordered the parties to proceed to arbitration. During the pendency of the arbitration proceeding, the insurer was adjudicated insolvent. Thus, pursuant to the guaranty act,[3] the association became a party to the arbitration and assumed defense of the defendant's claim. The following issues were submitted to the panel: What coverage did the policy provide? Did the panel have the authority to interpret the guaranty act? Was the association entitled to a credit for the benefits the defendant received from a health insurance carrier?

On June 10, 1996, the panel unanimously assessed damages in the amount of $850,000. In accordance with the guaranty act; see General Statutes § 38a-841 (1) (a) (ii); the panel concluded that the maximum amount the defendant could recover from the association was $299,900.[4] Neither party asked the panel to articulate the basis of its award. The association then applied to the trial court to vacate the panel's award, claiming that the panel lacked authority or subject matter jurisdiction to interpret provisions of the guaranty act because such authority lies only within the jurisdiction of the trial court. The association also claimed that the panel's findings evidenced a manifest disregard of the law and that the panel exceeded its jurisdictional powers or

[3] General Statutes § 38a-841 (1) provides in relevant part: "Said association shall: (a) Be obligated to the extent of the covered claims existing prior to the determination of insolvency . . . (ii) with respect to covered claims other than for unearned premiums, such obligation shall include only that amount of each such claim which is in excess of one hundred dollars and is less than three hundred thousand dollars . . . ."

[4] One member of the panel dissented, stating, "I dissent. I agree with the decision of the majority as to all issues except that I further find that the [association] is entitled to a credit in the amount of $23,017.48 for collateral source benefits paid. I, therefore, would award the claimant, the sum of $276,882.52."

so imperfectly executed them that a mutual, final and definite award on the subject matter was not made.[5] See General Statutes § 52-418.[6] The association asked the trial court to conduct a de novo review of the legal issues that arose during the arbitration.

The defendant filed a motion to confirm the arbitration panel's award,[7] arguing that because the arbitration was voluntary and the submission was unrestricted, the trial court's review was limited to whether the award conformed to the submission. At oral argument before the trial court, counsel for the association conceded that the arbitration, when it commenced, was voluntary and that the submission was unrestricted.[8] The association claimed, however, that once it assumed the defense

[5] The amount of coverage was vigorously contested during the arbitration. The association claimed that the amount of uninsured motorist coverage available is only $40,000 and the defendant claimed that it is $1,000,000. On appeal, the association still contends that the amount of coverage is only $40,000 and, in addition, that its obligation must be reduced by the benefits the defendant received from the defendant's medical insurance provider.

[6] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[7] In addition to seeking confirmation of the award, the defendant sought interest on the award, pursuant to General Statutes § 37-3a, claiming that the plaintiff lacked good faith in moving to vacate the award. The trial court declined to award the defendant interest. The defendant has not challenged that decision on appeal.

[8] The following colloquy took place at the hearing before the trial court:

"The Court: Is there any dispute as to whether or not it was restricted or unrestricted?

"[Plaintiff's Counsel]: Your Honor, what it was was a submission based under the relevant [uninsured motorist] law as briefed. The policy itself called for voluntary arbitration as briefed. However, I believe it was a full submission as a [uninsured motorist] matter. That's not contested. What my legal position is that at some point in time this no longer was a [uninsured motorist] matter. It became a guaranty law case.

"The Court: I understand. I'm limiting my questions to the arbitration as it was initiated, and I understand that [the association] wasn't a party to

of the claim, the arbitration ceased to be governed by uninsured motorist law and became an arbitration governed by the guaranty act.

The trial court, *Vertefeuille, J.*, in its memorandum of decision, found that the arbitration was voluntary and unrestricted, and ruled that the standard to be applied on review was whether the award conformed to the submission. The trial court found that the arbitration panel's award did conform to the submission. The trial court also found that the issues of coverage, liability and damages were submitted to the arbitration panel at the outset of the arbitration proceeding when the insurer was defending the claim. The trial court ruled that it lacked authority to undertake a de novo review of the legal issues as requested by the association, denied the application to vacate and confirmed the award. This appeal followed.

I

On appeal, the association not only asserts multiple claims of impropriety on the part of the trial court, but also raises a subject matter jurisdictional claim, which is paramount. If the arbitration panel lacked subject matter jurisdiction over the dispute, we need not reach the association's other claims. See *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 442, 705 A.2d 1012 (1997).

that. I take it, then, with respect to the original submission there's no dispute that is was unrestricted, then?

"[Plaintiff's Counsel]: It was unrestricted [uninsured motorist] submission, Your Honor.

"The Court: All right. And your position is that the arbitration was voluntary?

"[Plaintiff's Counsel]: Up until a point, Your Honor. The submission at the [uninsured motorist] level, but in terms of the contract were voluntary. In does not appear that the language in the policy was mandatory. Both parties submitted to the [uninsured motorist] hearing voluntarily, and I understand that that has some effect on the level of review. However, there came a point in time when this case was no longer within the jurisdiction of the [uninsured motorist] arbitrators. I believe that all issues are ripe for de novo review for that reason."

The essence of the association's jurisdictional claim before this court, simply stated, is that when the insurer became insolvent and the association was obligated to defend the claim, the arbitration panel was without authority to make an award because it would be called on to interpret and apply the guaranty act. Were we to give credence to this claim, no uninsured motorist arbitration panel would ever be able to complete its assignment if the motor vehicle insurance carrier became insolvent, regardless of the panel's interpretation of the act. We, therefore, disagree with the association's claim that the arbitration panel lacked subject matter jurisdiction to interpret the guaranty act for the purposes of the subject arbitration.

The association raised a similar jurisdictional issue in *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 438, where it claimed that the workers' compensation commissioner was without jurisdiction to make decisions concerning the guaranty act "because the Workers' Compensation Act limits the commission's jurisdiction to claims and questions arising only under that act." Id., 443. There, our Supreme Court looked to the relevant statutes and cited the "well established tenets of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law. . . . *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d

242 (1996)." (Internal quotation marks omitted.) *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 444.

On the basis of its analysis of the relevant statutes, our Supreme Court disagreed with the association's claim in *Hunnihan* that the workers' compensation commissioner did not have jurisdiction to interpret the guaranty act, citing language in the Workers' Compensation Act that directly refers to the association's becoming obligated to pay claims owed by insolvent insurers and directing the commissioner to hear all claims arising under the compensation act, e.g., General Statutes §§ 31-278 and 31-355 (e). See *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 445.

By applying the same tenets of statutory construction to the statutes relevant to this case, we reach a similar conclusion with respect to the authority of an uninsured motorist arbitration panel and the guaranty act. The legislature enacted laws concerning automobile insurance and provided protection for residents who were injured by uninsured motorists. "Each automobile liability insurance policy shall provide insurance, herein called uninsured . . . motorist coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury . . . ." General Statutes § 38a-336 (a) (1). Our uninsured motorist statutes direct how a voluntary arbitration shall proceed. See General Statutes § 38a-336 (c).

The legislature also recognized that insurers, including those who provide motor vehicle insurance, may become insolvent and provided for that possibility by creating the association. "For the purposes of administration and assessment, said association shall be

divided into three separate accounts . . . (b) the automobile insurance account . . . ." General Statutes § 38a-839. "Said association shall . . . (b) be *deemed the insurer to the extent of its obligations on the covered claims* and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent . . . ." (Emphasis added.) General Statutes § 38a-841 (1). Because the legislature is presumed to enact new legislation in view of existing law, we conclude that arbitrators of an uninsured motorist claim are empowered to consider the guaranty act when the association becomes a party to an uninsured arbitration proceeding.

Although the panel in this case was called on to interpret certain portions of the guaranty act, that task did not remove the arbitration from the operation of the uninsured motorist statutes. See General Statutes §§ 38a-336 (c) and 38a-839. "We construe [§ 38a-336 (a) (1)] to make no distinction between coverage issues governed wholly by the policy language and those which may also require the application of statutes or regulations in order to resolve them. The legislative purpose in providing arbitration as an expeditious method of dispute resolution for uninsured motorist claims would be thwarted by requiring arbitrators to interpret the policy language in one proceeding and the courts to determine in another the effect of statutes or regulations upon the issues involved. Such bifurcated procedure would be inconsistent with our view that [§ 38a-336 (a) (1)] transfers to the arbitration panel 'the function of determining, in the first instance, *all issues as to coverage*' where the policy contains a provision for arbitration of any uninsured motorist claim. . . . *Oliva* v. *Aetna Casualty & Surety Co.*, [181 Conn. 37, 42, 434 A.2d 304 (1980)]." (Emphasis in original.) *Wilson* v. *Security Ins. Group*, 199 Conn. 618, 623–24, 509 A.2d 467 (1986).

Furthermore, we recognize that when a claim originates under the uninsured motorist statutes and at some point during the proceedings it becomes necessary for the arbitration panel to interpret provisions of other enactments in order to resolve the claim, the purposes and public policy concerns underlying the uninsured motorist statutes nevertheless continue to be implicated until a conclusion is reached. If there were no jurisdiction under such circumstances and the arbitration panel were precluded from seeing such claims through to conclusion, the result would be to thwart the uninsured motorist statutes and the public policy underlying them.[9] See *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 446. Therefore, the panel had jurisdiction to consider the provisions of the guaranty act as necessary to arbitrate the defendant's uninsured motorist claim.

## II

We turn now to the association's nonjurisdictional claims concerning the appropriate standard of review. "The court must first determine the standard it is required to apply in reviewing the decision of the arbitrators. This inquiry hinges on whether the arbitration was voluntary or compulsory, and, if voluntary, whether the submission was restricted or unrestricted. If the parties engaged in voluntary arbitration, the trial court's standard of review, provided that the submission was unrestricted, would be limited to whether the award conformed to the submission. . . . If the parties engaged in voluntary, but restricted, arbitration, the trial court's standard of review would be broader

---

[9] The public policy underlying the uninsured motorist statutes is " 'to give an insured who is injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage.' " *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 306, 673 A.2d 474 (1996), quoting *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 632, 569 A.2d 1105 (1990).

depending on the specific restriction. . . . If the parties engaged in compulsory arbitration . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." (Citation omitted; internal quotation marks omitted.) *Norfolk & Dedham Mutual Fire Ins. Co.* v. *Wysocki*, 45 Conn. Sup. 144, 146–47, 702 A.2d 675 (1996), aff'd, 243 Conn. 239, 702 A.2d 638 (1997).

A

The association's first claim is that the trial court improperly concluded that the parties voluntarily agreed to arbitration. The trial court found, however, that the association conceded that the submission was voluntary and unrestricted. Our review of the hearing transcript supports that concession. See footnote 8. We hold, however, that the association's concession at trial does not override the legislative mandate that issues of coverage must be arbitrated.

"[Section] 38a-336 [c] . . . provides in pertinent part that '[e]ach automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding.' General Statutes § 38a-336 (c)." *Norfolk & Dedham Mutual Fire Ins. Co.* v. *Wysocki*, supra, 45 Conn. Sup. 147. "This provision, [our Supreme Court has] held, makes arbitration of insurance *coverage* issues compulsory." (Emphasis in original.) *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 488, 610 A.2d 1212 (1992). Because the subject contract of insurance contains an arbitration provision, arbitration of the coverage issue in this matter is compulsory. We therefore conclude that the association's concession at trial was of no consequence and agree with the association's position on appeal that arbitration concerning the amount of coverage is compulsory rather than voluntary.

## B

As a consequence of the trial court's having improperly decided that arbitration of the coverage issue is voluntary, the association claims that the trial court improperly (1) applied the standard of whether the award conformed to the submission, (2) failed to conduct a de novo review of the issue concerning coverage and (3) failed to apply the substantial evidence test of factual findings concerning coverage issues. We agree with the association that the trial court was required to conduct a de novo review to determine whether the panel's decision concerning arbitration of coverage was supported by substantial evidence in the record.

"We first set forth our standard of review of a statutorily mandated or compulsory arbitration award. 'When an arbitration panel's interpretation and application of the law is at issue, an appellate court must conduct a de novo review. *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 375, 593 A.2d 498 (1991); *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 655 n.11, 591 A.2d 101 (1991).' *Middlesex Ins. Co.* v. *Quinn*, 27 Conn. App. 573, 576, 609 A.2d 1008 (1992), aff'd, 225 Conn. 257, 622 A.2d 572 (1993); see also *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 191, 530 A.2d 171 (1987). Conversely, the appropriate standard of review of the factual findings of an arbitration panel is the substantial evidence test. *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 656. Pursuant to this test, the reviewing court must determine whether there is substantial evidence in the record to support the arbitrators' findings of basic fact and whether the conclusions drawn from those facts are reasonable. Id., 660–61 n.15; *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990)." *Dobuzinsky* v. *Middlesex Mutual Assurance Co.*, 49 Conn. App. 398, 401–402, 714 A.2d 702, cert. denied, 247 Conn. 908, 719 A.2d 902 (1998).

Pursuant to § 38a-336, arbitration of uninsured motorist coverage issues is compulsory. *Bodner* v. *United Services Automobile Assn.*, supra, 222 Conn. 488. Where arbitration is compulsory, the parties cannot agree to a lower standard of judicial review. See *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 187–88. We conclude, therefore, that the trial court improperly failed to conduct a de novo review and to apply the substantial evidence test to the record with respect to coverage in this case.

C

Our analysis of this issue is not complete, however, as we may determine whether the substantial evidence in the record before us supports the reasonableness of the panel's award as to the amount of coverage available to the defendant.[10] We conclude, after conducting a de novo review, that there is substantial evidence to support the panel's determination that there was $1,000,000 of uninsured motorist coverage available.

"A party not satisfied with a compulsory arbitration award may move to vacate the award pursuant to § 52-418. . . . It is the established policy of the courts to regard awards with liberality. . . . *Costello Construction Corp.* v. *Teamsters Local 559*, 167 Conn. 315, 320, 355 A.2d 279 (1974). Every reasonable presumption and intendment will be made in favor of an award of arbitrators and of their acts and proceedings. *Ramos Iron Works, Inc.* v. *Franklin Construction Co.*, 174 Conn. 583, 590, 392 A.2d 461 (1978); *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987). Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it. *Von Langendorff* v. *Riordan*, 147 Conn. 524, 527, 163 A.2d 100

---

[10] Pursuant to our supervisory powers; see Practice Book § 60-2; we conclude that this court may properly undertake a de novo review of the

(1960). Thus, a reviewing court must uphold an arbitration award unless it determines that the factual findings of the arbitrators are not supported by substantial evidence in the record. *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 21, 615 A.2d 1032 (1992); *Chmielewski* v. *Aetna Casualty & Surety Co.*, [supra, 218 Conn. 660–61]; *Allstate Ins. Co.* v. *Howe*, 31 Conn. App. 132, 135–36, 623 A.2d 1031 [cert. denied, 226 Conn. 911, 628 A.2d 983] (1993). In cases where the arbitrators do not explicitly state findings, which they are not required to do, a reviewing court must search the record to determine whether there is substantial evidence to support the award." (Internal quotation marks omitted.) *Almeida* v. *Liberty Mutual Ins. Co.*, 234 Conn. 817, 824–25, 663 A.2d 382 (1995).

"This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain . . . [a] finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Dufraine* v. *Commission on Human Rights & Opportunities*, 236 Conn. 250, 259–60, 673 A.2d 101 (1996). "The fact that a possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent the arbitrators' finding from being supported by substantial evidence." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Howe*, supra, 31 Conn. App. 136.

"Whether a factual finding of an arbitration panel is supported by substantial evidence is ultimately a question of law subject to de novo review by this court. *Chmielewski* v. *Aetna Casualty & Surety Co.*, [supra, 218 Conn. 667]; *Connecticut Building Wrecking Co.* v.

coverage issue without remanding the case to the trial court. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 481, 706 A.2d 960 (1998).

*Carothers*, 218 Conn. 580, 593, 590 A.2d 447 (1991). Substantial evidence will be found to exist if the record contains a substantial basis of fact from which the fact in issue can be reasonably inferred. *Adriani* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 315, 596 A.2d 426 (1991); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, [supra, 216 Conn. 639–40]." *Capozzi* v. *Liberty Mutual Fire Ins. Co.*, 229 Conn. 448, 450–51, 642 A.2d 1 (1994).

The record before this court contains copies of the following relevant documents: the panel's award; relevant portions of the insurance policy; portions of the bus company's application for insurance; a signed coverage verification form dated October 10, 1991; a letter dated May 28, 1992, to the defendant's attorney acknowledging receipt of the defendant's claim and informing him that the bus company had "one million single limit coverage on the uninsured motorist portion of their policy"; and a certificate of insurance dated August 20, 1991.[11]

We have reviewed all of these documents and conclude that they constitute substantial evidence as to the amount of coverage at issue. We find that the amount of coverage in effect on the date Zasun was injured was $1,000,000 and conclude that the panel's award can reasonably be inferred from the substantial facts in the record. We therefore uphold that portion of the trial court's judgment denying the association's application to vacate.[12]

[11] With the exception of the relevant portions of the insurance contract, these documents are contained in the appendix to the defendant's brief. The burden is on the association to provide the reviewing court with evidence sufficient to vacate the panel's award. See *Von Langendorff* v. *Riordan*, supra, 147 Conn. 527.

[12] "We can sustain a right decision although it may have been placed on a wrong ground." *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

## III

Finally, the association claims that the trial court improperly failed to conclude that the panel's award was in manifest disregard of the law with respect to the evidence and its defenses to the defendant's claims.[13] We do not agree.[14]

"Our inquiry into 'manifest disregard of the law' as a ground for vacating an arbitration award is guided by well established principles of the law of consensual arbitration. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Citations omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992). "[W]e have, however, recognized three grounds for vacating an award . . . (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted.) Id., 6. "Section 52-418 (a) (4) provides that an award shall be vacated if 'the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.' . . . We have also recognized, however, that an arbitrator's egregious misperformance of duty may warrant rejection of the resulting award." (Citations omitted.) Id., 7–8.

"Our recognition that there may be occasion to vacate an award because of egregious misbehavior is consistent with the developing jurisprudence in other jurisdictions. . . . Although the federal courts have

---

[13] Although the trial court concluded that the association had not made a claim of manifest disregard of the law in its application to vacate or in its briefs to the court, we find that the association's motion to vacate is premised on General Statutes § 52-418 (a) (4). The association's "invocation of a doctrine of manifest disregard of the law may, however, be encompassed by the existing statutory scheme for judicial review of arbitration in § 52-418." *Garrity* v. *McCaskey*, 223 Conn. 1, 7, 612 A.2d 742 (1992).

[14] See footnote 12.

interpreted their arbitration statute to permit this judicially created ground for vacating the award, they have carefully delineated the extraordinarily narrow scope of such a review. The test was applied to reject an aggrieved party's invitation to review and vacate an arbitration award in *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Bobker*, 808 F.2d 930 (2d Cir. 1986), where the court held that 'manifest disregard of the law' 'clearly means more than error or misunderstanding with respect to the law. . . . The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. . . . Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.' Id., 933–34." (Citation omitted.) *Garrity* v. *McCaskey*, supra, 239 Conn. 8–9.

In the case before us, the parties submitted three issues to the panel: coverage, jurisdiction and whether *the association is entitled to a credit for the benefits* that the defendant received from his health insurance carrier. We have addressed the first two issues above. The third issue with respect to credits for benefits the defendant received was a voluntary, unrestricted submission by the association's own admission. See footnote 8. The arbitration panel unanimously determined that the association was liable and assessed the amount of damages sustained by the defendant to be $850,000.[15]

---

[15] The arbitrators determined that the amount of coverage was $1,000,000. The association claims that that finding was based on the representations

"[W]here the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision . . . [w]e have recognized that when arbitration is consensual, rather than statutorily imposed, judicial review is limited in scope. . . . If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact. . . . Judicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission." (Citation omitted; internal quotation marks omitted.) *Bodner* v. *United Services Automobile Assn.*, supra, 222 Conn. 487–88. Because the arbitration concerning the issue of credits for health insurance benefits was voluntary

of an agent or employee of the insurer. The association further argues that a claim based on a representation of the coverage limits of insurance does not constitute a covered claim as defined by General Statutes § 38a-838 (6) because it does not arise out of and is not within the coverage of the insolvent insurance policy. See General Statutes § 38a-838 (6). The association contends that the claim as to the amount of coverage arises out of the conduct of the insurer.

In support of this argument, the association cites several cases from other jurisdictions that are based on totally different factual situations. See *Gauthier* v. *Champion Ins. Co.*, 583 So. 2d 556 (La. Ct. App. 1991) (penalties and attorney's fees imposed against insolvent insurer not covered claims); *Bentley* v. *North Carolina Ins. Guaranty Assn.*, 107 N.C. App. 1, 418 S.E.2d 705 (1992) (claim against insolvent insurer for bad faith refusal to settle, negligence and breach of fiduciary duty and unfair or deceptive trade practices not covered claim); *Vaughn* v. *Vaughn*, 23 Wash. App. 527, 597 P.2d 932, rev. denied, 92 Wash.2d 1023 (1979) (guaranty association not obligated on claim arising out of bad faith of insolvent insurer). The nature of the claims in the courts of our sister states are more analogous to the facts of *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 438, than to the facts of the case before us.

Here, the claim before the arbitrators concerned the liability and damages of a child seriously injured in a hit-and-run school bus accident. The arbitrators had no authority to determine the propriety of the acts of the agents and employees of the insurer. The arbitrators made a factual finding on the amount of coverage of the policy for which there was substantial evidence.

and unrestricted, the trial court was required to determine whether the award conformed to the submission. Furthermore, pursuant to the insurance policy, the parties agreed to be bound by the decision of the majority of the panel. See footnote 2.

The trial court found that two of the three members of the arbitration panel found for the defendant on the issue of whether the medical insurance benefits were to be deducted from the association's $300,000 limit of coverage. Of the three arbitrators, each party selected at least two. The arbitrators were unanimous on two issues and voted two to one on the third issue, which demonstrates that the impropriety claimed by the association is not "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Bobker,* supra, 808 F.2d 933. The trial court, therefore, concluded that the award conformed to the submission. We agree.

Furthermore, the association's position is contrary to our Supreme Court's interpretation of General Statutes § 38a-845, formerly § 38-282. "We agree with those courts holding that statutory provisions similar to § 38-282 (1) were intended to apply only to prevent duplicate or windfall recoveries for losses sustained by an insured or a claimant resulting from insurer insolvency. In rejecting an argument similar to that raised by [the association], the Supreme Court of Arizona declared: 'In general, the legislative objective was to make the Fund liable to the same extent that the insolvent insurer would have been liable under its policy.' *Arizona Property & Casualty Ins. Guaranty Fund* v. *Herder,* 156 Ariz. 203, 205, 751 P.2d 519 (1988). 'We note at the outset that the statute does not provide for any offset or reduction in limits payable.' . . . The Washington Court of Appeals has similarly stated that 'the purpose of the exhaustion provision is to avoid duplication of recovery and prevent windfall judgments' in holding

that a guaranty association 'cannot offset payments by a primary insurer when it is standing in the shoes of an insolvent excess insurer.' *Washington Ins. Guaranty Assn.* v. *McKinstry Co.*, 56 Wash. App. 545, [553], 784 P.2d 190 [rev. denied, 114 Wash.2d 1017, 791 P.2d 535] (1990)." *Connecticut Ins. Guaranty Assn.* v. *Union Carbide Corp.*, 217 Conn. 371, 390, 585 A.2d 1216 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.

