[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFFS' APPLICATION TO VACATE ARBITRATION AWARD (MOTION #101)
 I. FACTS
The plaintiffs, American Federation of State County 
Municipal Employees, Council 4, Locals 1303-125 and 1378, filed an application in this court pursuant to General Statutes §52-418, to vacate an arbitration award dated March 7, 1997, which was issued in favor of the defendant, the City of New London. The arbitration award at issue permits the defendant to subcontract operations of its water and sewer facilities to a private organization, namely, Professional Services Group ("PSG").
The plaintiffs filed complaints with the State Board of Labor Relations ("SBLR") against the defendant when they learned of the defendant's intent to subcontract the City's water and sewer operations with private organizations without first bargaining with the plaintiffs. In response, the defendant filed a complaint against the plaintiffs with the SBLR, claiming that the plaintiffs refused to bargain over the impact of the defendant's decision to subcontract.
Subsequently, the parties engaged in collective bargaining negotiations on these issues. The parties entered a Settlement Agreement which settled the complaints raised by both parties and CT Page 13035 provided for binding arbitration if the parties were unable to reach an agreement regarding the defendant's decision to subcontract work to private companies. Unable to reach an agreement, the parties declared an impasse and mutually presented the issue to binding arbitration before a panel of the State Board of Mediation and Arbitration ("SBMA"), pursuant to the Municipal Employees Relations Act ("MERA"), General Statutes §§ 7-472 and 7-473c. Prior to the commencement of the arbitration hearings, the parties also entered a Joint Stipulation and Agreement, which acknowledges the application of the MERA and waived certain time limits for commencing the arbitration hearing. This agreement further waived the procedure set forth in § 7-473c (d)(1) for the submission of proposed collective bargaining agreements and responses thereto, and created specific guidelines in lieu of that portion of the statute. After completion of the arbitration hearings, a majority of arbitrators accepted the defendant's Last Best Offer, which included provisions regarding the decision to subcontract and theimpact of said decision. The arbitration panel issued its decision on March 7, 1997.
As a result of this decision, the plaintiffs filed the present application to vacate the arbitration award on April 3, 1997. The plaintiffs believe that the award should be vacated for the following reasons: (1) the arbitrators exceeded their powers or so imperfectly executed them such that a mutual, final and definite award upon the subject matter was not made; (2) the arbitrators are guilty of misconduct by which the rights of the plaintiffs have been prejudiced; and (3) the award violates public policy. The plaintiffs filed a memorandum of law in support of their position on June 17, 1998. On November 18, 1998, the defendant filed a memorandum in opposition to the plaintiffs' application.
 II. STANDARD OF REVIEW
"Judicial review of arbitral decisions is narrowly confined."Stratford v. International Assn. of Firefighters, AFL-CIO, Local998, 248 Conn. 108, 114, 728 A.2d 1063 (1999). "Because [the court] favor[s] arbitration as a means of settling private disputes, [the court] undertake[s] judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternate dispute resolution." Id., 115. "Every reasonable presumption and intendment will be made in favor of an award of arbitrators and of their acts and CT Page 13036 proceedings. . . . Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it." (Citations omitted; internal quotation marks omitted.)Connecticut Ins. Guaranty Assn. v. Zasun, 52 Conn. App. 212, 224,725 A.2d 406 (1999); Almeida v. Liberty Mutual Ins. Co.,234 Conn. 817, 824, 663 A.2d 382 (1995).
"When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement." (Internal quotation marks omitted.) Stratford v. International Assn. ofFirefighters, AFL-CIO, Local 998, supra, 248 Conn. 114. "The submission [to the arbitration panel] constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided. . . . When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. . . . An application to vacate or correct an award should be granted when an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission. (Citations omitted.) Bic Pen Corp. v. Local No. 134,183 Conn. 579, 583-84, 440 A.2d 774 (1981)." (Internal quotation marks omitted.) Naek Construction Co. v. Wilcox Excavating ConstructionCo., 52 Conn. App. 367, 370, 726 A.2d 653 (1999).
Under this analysis, "[w]hen the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Citations omitted; internal quotation marks omitted.)Stratford v. International Assn. of Firefighters. AFL-CIO, Local998, supra, 248 Conn. 115. Where "the parties engaged in voluntary, but restricted, arbitration, the trial court's standard of review [is] broader [and depends] on the specific restriction." (Internal quotation marks omitted.) ConnecticutIns. Guaranty Assn. v. Zasun, supra, 52 Conn. App. 221. CT Page 13037
"The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." Garrity v. McCaskey,223 Conn. 1, 5, 612 A.2d 742 (1992). Thus, where there is no express language limiting the scope of the arbitration panel, a submission to arbitration must be deemed to be unrestricted. SeeWillington Education Assn. v. Board of Education,45 Conn. App. 769, 773, 699 A.2d 186, cert. denied, 243 Conn. 921 1,701 A.2d 344 (1997).
The Connecticut Supreme Court has "recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute; . . . (2) the award violates clear public policy; . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." Stratfordv. International Assn. of Firefighters, AFL-CIO, Local 998,
supra, 248 Conn. 116. Section 52-418 provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." General Statutes § 52-418 (a)(4).
Additionally, this court notes that the parties do not dispute the application of the MERA. "The Municipal Employees Relations Act (MERA), General Statutes § 7-467 et seq., imposes compulsory arbitration on a municipality and the representatives of its employees whenever the parties have reached an impasse in their collective bargaining." InternationalBrotherhood of Police Officers, Local 564 v. Jewett City,234 Conn. 123, 124, 661 A.2d 573 (1995); Carofano v. Bridgeport,196 Conn. 623, 635, 495 A.2d 1011 (1985). The purpose of § 7-473c
"is to avoid strikes and their attendant disruptions of municipal services by providing a mechanism to resolve by arbitration those issues concerning which the parties to an expiring municipal collective bargaining agreement have been unable to reach agreement by negotiations. . . . Section 7-473c (d) limits the discretion of the arbitration panel in two significant respects. First, with regard to any issue that the parties have not been able to resolve themselves, the statute confines the discretion of the arbitration panel to a choice between the `last best offer' of one party or another. . . . Second, in the exercise of a choice between one or another `last best offer,' the CT Page 13038 arbitration panel must "give priority to the public interest and the financial capability of the municipal employer . . ." General Statutes § 7-473c (d)(2)." (Citation omitted.) InternationalBrotherhood of Police Officers, Local 564 v. Jewett City, supra, 131.
 III. DISCUSSION
As previously stated, the plaintiff essentially argues that the award should be vacated for the following reasons: (1) the arbitrators exceeded their powers or so imperfectly executed them such that a mutual, final and definite award upon the subject matter was not made; (2) the arbitrators are guilty of misconduct by which the rights of the plaintiffs have been prejudiced; and (3) the award violates public policy. In support of these contentions, the plaintiffs argue that the only issue before the arbitration panel was whether the defendants could decide to subcontract the operations of the sewer and water facilities. The plaintiffs further argue that when the arbitration panel accepted the defendant's Last Best Offer, they exceeded their authority because the submission before them was restricted. Since the defendant's Last Best Offer contained additional provisions, specifically those regarding the impact of the defendant's decision to subcontract, the plaintiffs contend the arbitrators exceeded their power.
In opposition, the defendant contends that the initial submission between the parties was unrestricted, therefore, the arbitration panel was not limited to only one specific issue. This court must first determine whether the submission of the parties was restricted or unrestricted. On August 27, 1996, the parties expressly agreed to the following: "to meet and negotiateimmediately the threshold issue of the City's decision tocontract the Public Utilities' functions. In the event no agreement is reached by August 27, 1996, the parties agree that they have reached impasse and they will mutually submit the issue directly to binding arbitration using the Connecticut SBMA interim bargaining rules." (Emphasis added.) Defendant's Exhibit # 3. Subsequently, the parties filed a "Joint Stipulation and Agreement," which states that the parties agree to binding arbitration before the SBMA pursuant to the MERA. This document expressly waives some of the provisions set forth in § 7-473c
(d)(1), and also establishes a time table and requirements for the presentations by each party. See Defendant's Exhibit # 4. CT Page 13039
In determining whether the parties' submission was restricted or unrestricted, it is necessary to look to the language utilized by the parties. "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." Garrity v.McCaskey, supra, 223 Conn. 5. By explicitly stating in their collective bargaining agreement that the goal of the parties was to "meet and negotiate immediately the threshold issue of the City's decision to contract the Public Utilities' functions," the parties were expressly restricting the power and scope of their submission. Moreover, the arbitration panel itself noted in its memorandum of decision that "[t]his matter comes before this arbitration panel pursuant to the above [collective bargaining] agreement to resolve the impasse reached between the City and the Unions in their negotiations. . . . This is a single issuearbitration as evidenced both by the presentation at the hearingsand submission of the last best offers." (Emphasis added.) Defendant's Exhibit # 1. Accordingly, this court finds that the issue as presented to the arbitration panel was restricted.
In light of this restriction, however, are the remaining unwaived portions of the MERA, which provide guidance and instruction for municipal parties in arbitration. SeeInternational Brotherhood of Police Officers, Local 564 v. JewettCity, supra, 234 Conn. 132. Although the parties waived certain portions of § 7-473c (d)(1) regarding the procedure for proposed collective bargaining agreements and responses, they did not explicitly waive the portion of that section which mandates that "[i]n each . . . question, the panel . . . shall accept the final provision relating to such unresolved issues as contained in the statement of the last best offer of one party or the other." General Statutes § 7-473c (d)(1). Additionally, the parties did not waive § 7-473c (d)(2), which provides that "[i]n arriving at a decision, the arbitration panel shall give priority to the public interest and the financial capability of the municipal employer, including the consideration of other demands on the financial capability of the municipal employer. The panel shall consider the following factors in light of such financial capability: (A) The negotiations between the parties prior to arbitration; (B) the interests and welfare of the employee group; (C) changes in costs of living; (D) the existing conditions of employment of the employee group and those of similar groups; and (E) the wages, salaries, fringe benefits, and other conditions of employment prevailing in the labor market, CT Page 13040 including developments in private sector wages and benefits." General Statutes § 7-473c (d)(2). The parties remain subject to these portions of the statute, since they did not explicitly waive the application of these provisions.
This court must next determine whether the arbitration panel exceeded the scope of the restricted submission, in light of the provisions set forth in § 7-473c (d)(2), thereby constituting a violation of § 52-418. This court finds that the arbitration panel fully complied with the requirements of § 7-473c (d)(2) and did not exceed the parties' submission in selecting the last best offer of the defendant. As such, there has been no violation of § 52-418, and there are no grounds which support overturning the award issued by the arbitration panel.
According to the transcript of the hearing before the arbitration panel, the plaintiffs raised a concern over the admission of any evidence pertaining to issues of the impact of the defendant's decision to subcontract. In response, one member of the arbitration panel stated: "We have a statutory mandate to look at a number of factors, one of which is a financial capability, another which is the public interest. Those two being the preeminent factors. But below that we certainly do have the five or six other factors to look at, one of which is the interest and welfare of the employee group. Frankly, I'm not sure how can I make a determination whether or not there is justification [for permitting the subcontracting] unless I'm able to hear from the people who will be employing these misplaced, if you will, employees, their view of how [it will] affect their interest and welfare. So to the extent that your comment was an objection, I'm [going to] overrule it and allow the testimony." Defendant's Exhibit # 5, Statement of Laurie G. Cain, Esq., Arbitration Panel, Transcript of Hearing, Case No. 9697-MBA-35, November 26, 1996.
During the course of the hearings, the arbitration panel heard evidence which showed that: (1) the City suffers from intense fiscal problems, partly due to the facts that it is a very densely populated area with a submedian household income; (2) the City lacks available land for new development and has few options to stimulate growth anytime in the near future; (3) federal cutbacks in defense have adversely impacted the City's main industries, leading to numerous layoffs and a very high unemployment rate. CT Page 13041
The arbitration panel then looked to see if the financial capability of the City and the public interest criteria involved truly supported the City's decision to subcontract with PSG. In finding support for the City's decision to subcontract, the panel made the following findings of fact: (1) the evidence of the City demonstrates that the City's financial capability is severely limited, due to the fact that finances are tight, and there is an over-dependence on property taxes and state aid; (2) the public interest would be served by a financial savings of approximately $1.2 million for each of the next five years under the private subcontract with PSG; (3) the public interest would be well served by the increased efficiency and depth of expertise which PSG would bring to the operation of the plant, as well as the compliance with environmental permits which PSG would contractually guarantee.
As required by the MERA, the panel next looked to the following factors in light of such financial capability in determining whether the decision of the City to subcontract was fair and reasonable: (1) the prior negotiations between the parties; (2) the interest and welfare of the employee group; (3) changes in the cost of living; (4) the existing conditions of employment of the employee group and those of similar groups; and (5) the wages, salary, fringe benefits and other conditions of employment prevailing in the labor market, including the terms of recent contract settlements or awards in collective bargaining for other municipal employee organizations and developments in private sector wages and benefits.
The panel found that there were no prior negotiations between the parties since the plaintiffs refused to negotiate the impact issue without first negotiating the decision to subcontract. Although the parties filed prohibitive practice charges against each other, all complaints were withdrawn when the parties entered a collective bargaining agreement, which ultimately resulted in an impasse.
The panel's concern for the interest and welfare of the employee group necessarily included an examination of the impact of the City's decision to subcontract. The panel noted that the record showed that the City made numerous promises through its contract with PSG, which are also evident in its Last Best Offer, regarding the effect on Union employees. The panel acknowledged that the defendant made the following promises through its CT Page 13042 contract with PSG and in its Memorandum of Agreement and Last Best Offer:
"1. All current employees who pass the contractor's drug test will be employed by PSG.
2. There will be no reduction in force by means of a layoff of any of the current employees during the term of the contract.
3. The current employees can only be terminated for cause (ie.,
for failure to perform their job satisfactorily.
4. The current employees will receive the same pay and will be afforded `equal or better' benefits with no exclusions for preexisting medical conditions.
5. All current employees will retain seniority and accrued sick time.
6. All accrued vacation time will be paid by the City.
7. Current employees have the option to stay in the City's pension plan or join the plan offered by the company.
8. Current employees will maintain their seniority in the event the City takes back the management of the systems during the term of their collective bargaining agreements."
Defendant's Exhibit # 1.
After examining all of the evidence before it, the panel concluded that the City's employee safeguards would adequately protect the interests and welfare of the employee group in this case. There was no evidence before the panel regarding any changes in the cost of living, and only limited evidence by the City regarding the existing conditions of employment of the employee group and those of similar groups, and the wages, salary, fringe benefits and other conditions of employment prevailing in the labor market. The panel stated that "[t]o the extent evidence was offered, it is addressed under the discussion of public interest and interest and welfare of the employee group. " Defendant's Exhibit # 1.
In awarding the City's Last Best Offer, the panel concluded that "[t]he City has presented substantial credible evidence to CT Page 13043 the panel demonstrating that the statutory factors under MERA support the City's decision to subcontract. The City has demonstrated that its decision to subcontract is supported by the priority factors of the public interest and the City's limited financial capabilities, as well as by the interests and welfare of the bargaining unit employees themselves." This court is satisfied that the arbitration panel thoroughly examined the evidence placed before it, and sufficiently complied with the statutory requirements as proscribed by the MERA.
 IV. CONCLUSION
This court is satisfied that the arbitration panel made a reasonable and appropriate award based upon the restricted submission of the parties. The panel also fully complied with the requirements of the MERA in reaching its decision. The parties presented to the arbitration panel a restricted submission regarding whether the City could decide to subcontract the operations of its sewer and water facilities. As required by the MERA, however, the arbitration panel was statutorily required to look at a number of factors, some of which included an investigation into the potential impact of the defendant's decision to subcontract on the employees affected. This court finds that the panel thoroughly complied with the guidelines of the MERA and did not exceed its authority. As such, this court finds no reason to vacate the arbitration award pursuant to §52-418. Accordingly, the plaintiffs' application to vacate the arbitration award is hereby denied.
D. Michael Hurley Judge Trial Referee